[S. F. No. 1989. Department One.—April 8, 1902.]

A. S. BALDWIN, Appellant, v. WILLIAM H. H. HART, and FLORENCE B. HINCKLEY, Respondents.

PROMISSORY NOTE—CONSIDERATION—FAILURE—UNSUPPORTED FINDING— ATTORNEY AND CLIENT.—*Held,* that the evidence in this action shows that a finding that there was an entire failure of consideration for the note in suit is unsupported by the evidence, and that the evidence shows without conflict that there was a consideration other than money, as well as a money consideration, moving to the attorney defendant for his note, which was indorsed by his client, and represented a loan made from the plaintiff to his client, it appearing that, in consideration of the loan, the attorney secured the client's ratification of his contract made with her guardian, while she was a minor, for a large percentage of an estate which he was litigating for her, and that the note in suit, indorsed by the client, was given in lieu of a contract by the attorney to pay the plaintiff the amount of the loan out of the first money received by him from the estate, in which contract he further agreed to use his best efforts to secure the agency for plaintiff's firm for the sale of the estate, in which case, the attorney was to share commissions with plaintiff's firm, and the loan was to be credited upon the attorney's share of such commissions and canceled, and it appearing that the note was given in further consideration of a settlement with and release of another contracting party, who was released by the plaintiff, at the request both of the attorney and of his client.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion.

Freeman & Bates, for Appellant.

Aylett R. Cotton, and Gunnison, Booth & Bartnett, for Respondents.

CHIPMAN, C.—Action on a promissory note executed and delivered to plaintiff by defendant Hart, for the sum of $5,478.60, dated May 28, 1897, due six months after date, with interest from date, at seven per cent per annum, payable semi-annually. The note was indorsed by defendant, Florence B. Hinckley: "For value received I hereby guarantee payment of this note, and I hereby waive demand, protest, and notice

of non-payment." The complaint is verified. The answer admits the execution of the note, and as a first defense denies that defendants executed or delivered it for value, and denies that there was ever any consideration for the note, and alleges an entire want of consideration. For a second defense the answer alleges that on or about June 28, 1892, "plaintiff loaned to Florence Blythe, who is said defendant Florence Blythe Hinckley, and Kate C. Perry, or to one of them, the sum of five thousand dollars, and no more, and in consideration of which loan said Florence Blythe and Kate C. Perry made and delivered to said plaintiff their promissory note dated on that day," payable one year from date for ten thousand dollars, with interest from maturity; that the only consideration therefor was said sum of five thousand dollars so loaned, and that said defendant Hart never received any part of said sum; that on or about June 28, 1892, said Hart "signed and delivered to said plaintiff a writing in and by which he promised to pay said plaintiff five thousand dollars out of the first money received by him from the property or estate of Thomas H. Blythe, deceased"; that there never was any consideration for said writing so signed by said Hart, and that said promissory note mentioned in the complaint "was given by said Hart to said plaintiff in lieu of said writing, and only in lieu thereof, and without any consideration for said promissory note, and that there never was any consideration for said note."

The cause was tried by the court, sitting without a jury, and the court found that the allegations of the answer are true; "that there is, and ever has been, an entire want of consideration for the promissory note described in plaintiff's complaint." Judgment accordingly passed for defendants. Plaintiff appeals from the judgment and the order denying his motion for a new trial. Appellant attacks the finding that there was an entire want of consideration, as unsupported by the evidence. The findings rest upon certain documentary evidence, and upon the testimony of defendant Hart, and on the testimony of Mr. George E. Bates in rebuttal. As we think the judgment and order should be reversed, it becomes necessary to state the evidence somewhat fully.

Defendant Hart testified that about June 28, 1892, he applied to Mr. George E. Bates to secure a loan of five thousand

dollars for Mrs. Hinckley and Mrs. Byrne (Florence Blythe and Kate C. Perry) ; that Mr. Bates obtained the money and loan from plaintiff, who gave his check for the amount, and these ladies delivered to him their note for ten thousand dollars. This note was payable one year after date, with interest after maturity at ten per cent, and was signed by Florence Blythe and Kate C. Perry. Witness explained that this ten-thousand-dollar note was afterwards (in 1897) paid by a new note signed by Mrs. Hinckley and indorsed by witness; this is more fully explained by the testimony of Mr. Bates. The witness continued: "At the time of the original transaction, June 28, 1892, I also gave Mr. Baldwin an agreement." This agreement reads: "Whereas, A. S. Baldwin, at the instance and request of W. H. H. Hart, has this day loaned Florence Blythe five thousand dollars ($5,000) in gold coin; in consideration thereof, and as an inducement to said Baldwin to make said loan, I, W. H. H. Hart, hereby certify and declare that I have a contract ratified by Florence Blythe whereby I am to receive twelve and one half per cent of all property awarded to Florence Blythe from the estate of Thomas H. Blythe (a copy of which contract is hereto attached), and that I have not assigned, encumbered or conveyed all or any portion of said contract, save and except a partial assignment thereof dated April 11, 1890, made to George E. Bates, and other agreements to pay out of the last five per cent amounts not exceeding one per cent. I hereby agree that out of the first moneys after paying said debts I receive from Florence Blythe, or from the estate of Thomas H. Blythe, either from my contract aforesaid, or allowed me by any court or judge or otherwise, that I will pay to said Baldwin or his assigns the sum of five thousand dollars ($5,000) in gold coin, and I hereby assign and set over to said Baldwin an interest in said contract and in any property that I may receive or become entitled to from the estate of Thomas H. Blythe, or from property formerly owned by him, to the extent of $5,000. I further agree that in the event of the Blythe Block (so called) in the city and county of San Francisco, or any portion thereof, being offered for sale, I will use my best efforts to secure the agency for the sale of said property for said Baldwin, or for the firm of McAfee, Baldwin & Hammond. A. S. Baldwin agrees that in the event that he, or his firm, secures said

agency, and makes the sale of said property, that he, or they, will, if their net commission on said sale amounts to ten thousand dollars ($10,000), upon receipt of same, credit said Hart on this contract with five thousand dollars, and will pay to him one half of any sum received by them as net commission in excess of ten thousand dollars. Hart further agrees that he will not assign or encumber his said contract in any way, except with the knowledge of said Baldwin, and that all assignments and encumbrances shall be subordinate to this contract and assignment, and also subordinate to the assignment made to Bates as aforesaid. June 28, 1892. A. S. Baldwin, Wm. H. H. Hart.''

At the same time Miss Blythe and Mrs. Perry executed and delivered to Baldwin a contract, reciting the execution of the ten-thousand-dollar note, and stating that they agreed to pay him five thousand dollars out of any money received from the Blythe estate as allowance or otherwise, to be indorsed on said note. Continuing, witness Hart testified: "I did not receive any part of this $5,000. I did not receive any money or property of any kind in connection with the making of that agreement of January [should read June] 28, 1892. The note of May 28, 1897, on which this suit was brought, was given for the purpose of taking up the contract between Mr. Baldwin and myself, dated June 28, 1892, for five thousand dollars, and the $478 was added as interest. That is the sole consideration for the note sued on in this action. . . . There was no consideration for the execution of my agreement with Baldwin other than the loaning of the five thousand dollars to Florence Blythe and Kate C. Perry.''

Upon cross-examination of witness Hart, the following testimony was given by him:—"Question by Mr. Bates: In June, 1892, did you state to me why it was that you were willing to execute a contract with Mr. Baldwin to pay him $5,000 if he would make the loan?—A. I stated to you that I would do so.

"Q. Did you state to me why you would do so?—A. I told you that Florence Blythe and Mrs. Perry desired to obtain the money and that Mrs. Perry had promised me that my contract should be ratified if I could get the loan.'' Witness, continuing, said: "I had a contract for twelve and one-half per cent of the Blythe estate, signed by the guardian of Florence

Blythe. She became of age on December 18, 1891, but she had not ratified my contract up to this time."

"Q. Was it not a part of the consideration moving to you to obtain this loan her statement that if you should obtain this loan for her that she would give you her personal ratification of the twelve and one half per cent contract?—A. That depends entirely upon what you mean by a consideration moving to me. If you mean that by my securing the loan in the manner that I did, that she promised my contract should be ratified, then that is correct. So far as Mr. Baldwin was concerned, he advanced nothing on account of it further than the five thousand dollars, as previously stated.

"Q. Did you not state to me that you were willing to make this contract with Mr. Baldwin for five thousand dollars because by so doing you could get your contract ratified by Florence Blythe?—A. What I stated to you, in substance, was this: That by securing a loan for Mrs. Perry and Florence Blythe of $5,000 that they would give their note for ten thousand dollars, payable as specified in the contracts, and contracts were prepared accordingly. I further stated to you that I was very desirous the loan should be made, because I could get my contract ratified, and that I would execute the contract offered here in evidence to Mr. Baldwin for $5,000. That is, in substance, what I said, and what was done."

Witness, continuing, said: "At the time the five thousand dollars was paid over, Florence Blythe did sign her ratification of the contract her guardian had made with me for twelve and one half per cent of the Blythe estate." This ratification and the contract ratified are as follows: Here follows the contract of witness Hart with the guardian of Miss Blythe. This contract recites the pendency of litigation relating to the Blythe estate, the claim of Florence Blythe as sole heir, the numerous litigants claiming the estate and many other facts leading up to the importance of the services rendered and to be rendered by defendant Hart as counsel for Florence Blythe, and as justifying the payment of twelve and one half per cent on an estate estimated by the witness to be of the value of $2,800,000. Indorsed on this contract is the following ratification by Miss Blythe: "I hereby certify that I have read the foregoing contract, consisting of five pages besides this, and know the contents thereof, and for value received, I here-

by ratify and confirm said contract in all its terms and conditions, and agree to pay the compensation therein provided for to the said Wm. H. H. Hart for his services. San Francisco, June 28, 1892. Florence Blythe. Witness: George E. Bates.''

Witness Hart testified that at the time Baldwin made the loan the Blythe property ''was in a sea of litigation''; that the trial court had decided in favor of Florence Blythe, ''but the appeal therefrom had not been decided by the supreme court.'' He testified further: ''So far as I know, neither Florence Blythe nor Mrs. Perry had any means to pay the Baldwin loan other than their expectancy of winning the Blythe estate property. I was then, and am now, attorney for Florence Blythe, and familiar with her affairs.'' Defendants here rested.

In rebuttal, attorney George E. Bates testified: ''I represented Mr. Baldwin in the transaction out of which this note grew. My first knowledge of it was from General Hart. He called at my office and wanted to secure a loan of five thousand dollars for Mrs. Perry and Miss Blythe. He stated to me that if I would make the loan myself, or secure it to be made from any of my clients, that Mrs. Perry and Miss Blythe would give their note for ten thousand dollars, due in one year without interest, and that he would also give a contract to pay $5,000, and he stated to me that he was very anxious to have this loan made because Miss Blythe had agreed that if he could secure this loan for her that she would ratify the contract heretofore made by her guardian, giving to him, General Hart, twelve and one half per cent of the property which might be recovered from the Blythe estate, and that she was now of age and could ratify that contract. I saw Mr. Baldwin and he agreed to make the loan. The documents were drawn up and a check was drawn by Baldwin—which I have in my hand—payable to Florence Blythe for five thousand dollars, which check bears the indorsement of Florence Blythe, and W. H. H. Hart, and is marked 'Paid. Clearance House, June 29, 1892.' I delivered that check to General Hart and Florence Blythe. They were all present, and Mrs. Perry. Miss Blythe and Mrs. Perry signed the note, General Hart signed his agreement, and Miss Blythe signed her ratification of the twelve and one half per cent. The Baldwin agreement

and the Perry and Blythe note were delivered to me, and I handed the check over, and General Hart, Miss Blythe, and Mrs. Perry went off together with it.

"The circumstances attending the particular note in suit were and are as follows: In 1897 Mr. Baldwin was desirous of pressing the obligation for payment. I called on and communicated with General Hart a number of times on the subject, and, on June 2, 1897, I received from General Hart a letter—which I have in my hand. On receiving this letter I wrote to General Hart on the same day. He and Florence Blythe Hinckley desired to make a settlement with Mrs. Perry, and they desired Baldwin to accept a note with Mrs. Perry's name off, and a few days later, about June 5, 1897, Mrs. Hinckley came to General Hart's office in the Crocker Building, and I went there, and it was then agreed that if Mr. Baldwin would release Mrs. Perry from the ten-thousand-dollar note that the amount owing on that note should be figured up, interest running from the maturity of that note,—for one year there was no interest on that note,—and Mrs. Hinckley should give her new note to Mr. Baldwin for the amount, which should be indorsed and guaranteed by General Hart, and that for the amount owing on General Hart's contract with Mr. Baldwin that General Hart should give his note for that amount and that Mrs. Hinckley would indorse and guarantee it. This was done. The note in suit was given by Hart and indorsed by Mrs. Hinckley. The other note was given by Mrs. Hinckley and indorsed by General Hart, and the former note signed by Mrs. Hinckley and Mrs. Perry was delivered up, and also General Hart's contract with Mr. Baldwin."

Witness, continuing, said: "General Hart told me that Florence Blythe would ratify his contract if he got her the loan." Witness Hart was recalled and testified: "Mr. Bates is in error when he states that I told him that Miss Blythe would ratify my contract if I got her the loan. I had not seen her for several months. It was Mrs. Perry who told me that if I secured the loan she would have Florence Blythe ratify the contract." Mr. Bates's narrative was not disputed in any other respect and the evidence here closed. The loan was desired, according to General Hart's testimony, for Miss Blythe and Mrs. Perry; all the parties were present on May 28, 1892, and all the documents were executed as parts of one trans-

action. Whether General Hart stated to Mr. Bates that Miss
Blythe had told him she would ratify his contract with her
guardian if he could get the loan, or whether the statement
was made by Mrs. Perry, is not very material; one or the other
of these interested ladies so informed Mr. Bates, and Miss
Blythe did at the time the loan was made ratify the contract,
and in his contract with Baldwin General Hart recited that
the loan was made at his instance and request, and in consid-
eration of the loan "and as an inducement to said Baldwin
to make said loan," he certified and declared that he had a
contract ratified by Florence Blythe whereby he was to receive
twelve and one half per cent of all property awarded to
Florence Blythe, etc., and as further assurance attached a
copy of the guardian's contract. The ratification referred to
could have been no other than the ratification at that time,
and as part of the loan transaction, indorsed on his contract
by Miss Blythe. When asked directly if this ratification was
not part of the consideration moving him to obtain the loan,
he replied: "That depends entirely upon what you mean by
a consideration moving to me. If you mean that by secur-
ing the loan in the manner that I did, that she promised my
contract should be ratified, then that is correct." Again he
testified: "What I stated to you [Mr. Bates], in substance,
was this: That by securing a loan for Mrs. Perry and
Florence Blythe of $5,000, that they would give their note
for $10,000. . . . I further stated to you that I was very
desirous the loan should be made, because I could get my
contract ratified, and that I would execute the contract offered
here in evidence to Mr. Baldwin for $5,000."

The subsequent agreements entered into with Baldwin by
General Hart and Miss Blythe throw a strong light on the
original agreements. They were made five years after the
original obligations, and with full knowledge of all that had
then taken place. It appears that they "desired to make a
settlement with Mrs. Perry, and they desired Baldwin to
accept a note with Mrs. Perry's name off," and so at General
Hart's solicitation the original Perry-Blythe note was paid
by the execution of a new note by Miss Blythe, guaranteed
by Hart, and the Hart contract to pay five thousand dollars
was taken up and his note (the note in suit), guaranteed by
Miss Blythe, was substituted, and this was done in part con-

sideration of Baldwin's releasing Mrs. Perry from the ten-thousand-dollar note. It is true that General Hart testified that there was no consideration for his agreement "other than the loaning of the five thousand dollars to Florence Blythe and Kate C. Perry." This can be regarded only as the conclusion of the witness and not as the fact. There is no substantial conflict as to what took place, and the intention of the parties is unmistakable. The sole question in the case is, Do the facts show a consideration moving to defendant Hart? Respondents contend that Hart's agreement was to pay a bonus to Baldwin, with the understanding that if Baldwin's firm obtained an agency to sell the Blythe Block, and the net commission to them amounted to ten thousand dollars, then the agreement was to be canceled and Hart to receive one half the commission to be paid in the course of such agency in excess of ten thousand dollars; that the contract meant no more than that Baldwin and Hart were to be partners in the sale of the Blythe Block, and as there is no breach of that part of the contract alleged or proven against Hart, it must be held that he has fully complied with all its terms.

It is further contended that "where a simple contract is made for purely a money consideration, no greater judgment can be recovered than the amount actually paid, with stipulated interest." Respondents rely on *More* v. *Calkins,* 85 Cal. 177; 95 Cal. 436;[1] and as to the last proposition, they rely on *Sawyer* v. *McLouth,* 46 Barb. 353. It is claimed that the case in Barbour's Reports holds that there is a distinction between a valuable consideration other than money and a simple money consideration; that in the former case the slightest consideration would support a promise to pay the amount agreed to be paid, while in the latter the consideration will support a promise only to the extent of the money forming the consideration. It is not necessary to affirm or deny this doctrine. We think the evidence shows without conflict that there was a consideration other than money, as well as a money consideration, as the actuating motive on defendant Hart's part in making the contract with Baldwin. He testified to anxiety to secure Miss Blythe's ratification of

[1] 29 Am. St. Rep. 128.

his contract with her guardian, and he did secure it as a part of the transaction, and when it came to substituting the note in suit for the contract the undisputed testimony is, that both Hart and Miss Blythe desired to make a settlement with Mrs. Perry, and wanted Baldwin to accept a note and release Mrs. Perry from the ten-thousand-dollar note, and, as part of that transaction, Hart was to guarantee the note in lieu of the ten-thousand-dollar note, and Miss Blythe was to guarantee Hart's note, given in lieu of his contract obligation. This was the transaction at the time the note in suit was given, and it seems to me there was a valuable consideration, and it was such consideration as was deemed both by General Hart and Miss Blythe of sufficient value to renew the obligations referred to, which otherwise would not have been surrendered by Baldwin. It is true that, as matters turned out, Baldwin made a very profitable loan, but at the time the property to which he looked ''was in a sea of litigation.'' The controversy was so surrounded with complex questions and uncertainty as to the final outcome that the heir felt warranted in ratifying a contract by which the leading counsel was to receive one eighth of the entire estate, not to speak of other amounts to be met in the course of the litigation. In the light of the circumstances, the contracts with Mr. Baldwin do not seem unconscionable or extraordinary. We cannot give the Hart-Baldwin contract the interpretation contended for by respondents; it cannot, we think, be reasonably held to mean that Hart was only to use his best efforts to secure to Baldwin the privilege of handling the Blythe Block on commission in the event the litigation was successful, and otherwise the contract was to be canceled and Hart pay nothing. The more reasonable interpretation is that he was to pay to Baldwin five thousand dollars out of the first money he received from the Blythe estate, and he was also to use his best efforts to secure the agency for the sale of the Blythe Block for Baldwin's firm, should the property be offered for sale; and if this contingency should happen, and if Baldwin realized ten thousand dollars as commissions, he agreed to credit Hart's contract with five thousand dollars, or, in other words, cancel it. And it was further agreed that they would share the net commissions above ten thousand dollars. This part of the contract was independent of the other part, and

presented a contingency that might never happen, and was of equal advantage to Hart and Baldwin. That it was a separate and independent provision is apparent from that part of the agreement by which Hart assigned an interest in his twelve-and-one-half-per-cent contract to Baldwin to secure the five thousand dollars. This he would not have done if the contract meant no more than respondents claim for it. In fact the provision respondents rely on was simply a means by which Hart hoped to make the estate pay the five thousand dollars he had promised to pay, and perhaps yield him additional compensation by sharing commissions with Baldwin's firm. The trial court erred in finding that there was an entire failure of consideration for the note in suit, and the judgment and order should therefore be reversed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.