[Civ. No. 9311. First Appellate District, Division Two.—February 20, 1934.]

M. KANTER SILK CORPORATION, Respondent, v. L. H. CRAMER, Appellant.

Charles A. Bank for Appellant.

Sparling & Teel and Courtney A. Teel for Respondent.

STURTEVANT, J.—From a judgment in favor of the plaintiff the defendant L. H. Cramer has appealed. In its complaint the plaintiff pleaded a written guaranty and prayed for a judgment based thereon. On the calling of the case counsel made an opening statement. That statement and the reply thereto took the form of stipulations, from which it appeared that the plaintiff is a silk merchant. The defendant Cramer and one Goldstein owned two businesses—Varsity Frocks and Patsy Frocks. Both were incorporated and the stock was owned jointly by Cramer and Goldstein. Varsity Frocks was a manufacturing organization. Patsy Frocks was a retailing organization. The plaintiff had been selling goods to the Varsity Frocks. The latter manufactured the goods, and Patsy Frocks retailed them. Commencing in March, 1930, the plaintiff sold to Varsity Frocks Ltd. large quantities of drygoods. Each invoice had indorsed on it "terms". Prior to the execution of the guaranty on some of the invoices the terms were 6 per cent in 60 days, some 7 per cent in 10 days, some 8 per cent in 10 days, etc. After the date of the guaranty the credit given was 6 per cent in 60 days. On February 31, 1930, there was a balance due and payable of $3,012.45. The larger part of that balance was long past due. On that date plaintiff prepared and the defendant signed an instrument in writing which, so far as material to this appeal, provided as follows: "For a valuable consideration, receipt whereof is hereby acknowledged and in further consideration of your extending credit to Varsity Frocks Ltd., Ninth and Broadway Bldg., Los Angeles, Cal. (hereinafter called the customer) the undersigned, Louis Cramer agrees to pay to you when due or at any time thereafter, any indebtedness contracted by the customer, that may exist at any time hereafter, or to be contracted for by said customer

any amount not exceeding $5,000.00 (Five Thousand Dollars), if not paid promptly at maturity by said customer for purchases made from M. Kanter Silk Corporation, 819 Santee St., Los Angeles, Cal." Thereafter the plaintiff sold the Varsity company other goods in the sum of $435.68. It sued this defendant for the total, $3,448.14. The defendant paid $435.68 and contested his liability for the balance. Except as we have noted, no evidence was introduced showing the circumstances under which the guaranty was made.

In several points the defendant contends that the contract by its terms imposes no liability for past indebtedness. It must be conceded that it is not expressly so limited. On December 31, 1930, when the guaranty was signed there was owing to the plaintiff $3,012.45. A large part was past due. As the evidence does not show to the contrary we must assume that after the guaranty was executed immediate payment was neither demanded nor threatened. Credit was extended thereon by the acts of the plaintiff until after the Varsity Frocks went into bankruptcy. In the meantime additional purchases were made. Terms no better than on previous purchases were given, and such terms, so far as the record discloses, were accepted without objection. These acts of the parties were some evidence of the contemporaneous construction by the parties and such construction is of weight in the interpretation of contracts. (*Keith* v. *Electrical Engineering Co.*, 136 Cal. 178, 181 [68 Pac. 698].)

It is provided in the guaranty, ". . . Louis Cramer agrees to pay . . . when due, or at any time thereafter, *any* indebtedness contracted by the customer, that may exist at *any* time hereafter, . . . " When that language was written the parties did not limit it to either future debts, or past debts, but stated *any* indebtedness. Knowing that some of the debts existed when they were writing, and, at least for a time, would continue to exist in the future, nevertheless their covenant extended to debts that "may exist at *any* time hereafter". If, at the time the instrument was written, the parties had in mind only debts arising on future invoices it was a simple matter to express, but it was not done.

If the document is interpreted as contended by the defendant, then it reads as follows: "Louis Cramer agrees to pay to you ~~when due or at any time thereafter,~~ any indebtedness ~~contracted by the customer, that may exist at any time hereafter,~~ or to be contracted for by said customer any amount not exceeding $5000.00 (Five Thousand Dollars), if not paid promptly at maturity by said customer for purchases made from M. Kanter Silk Corporation." That is, no effect whatever is given to the words deleted. But section 1641 of the Civil Code is as follows: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." From what has been said we think it is clear that the contract was not limited to debts incurred in the future. The uncertainties, if any, having been removed by the rules discussed there is no occasion for resorting to the fact that the document was prepared by the plaintiff. (6 Cal. Jur. 309.)

■ The defendant contends that the guaranty to be sufficient must contain written words to definitely identify the past indebtedness, to the end that the recovery, if any, may be based on the terms of the written instrument without reference to parol testimony. However, he does not call our attention to any specific word, or words, that are omitted. From what has been said above, we think it is quite clear that the instrument in effect referred to all indebtedness whether incurred in the past or in the future.

■ Under this same point the defendant asserts that the instrument does not disclose the existence of any consideration to support the claim of liability for prior indebtedness. The point is without merit. It is presumed that for a written promise there was a consideration. (Civ. Code, sec. 1614.) Furthermore, the instrument before us recites that it was made "for a valuable consideration receipt whereof is hereby acknowledged and in further consideration of your extending credit . . . " There is no evidence contradicting or limiting the words quoted from the written instrument.

■ Again it is asserted by the defendant that there was no proof of any principal indebtedness by competent testimony. The defendant quotes with approval, "In order to be admitted in evidence the book must appear to contain the party's original entries or the first permanent records

of the transactions, and when the contrary is discoverable upon the face of the books, or comes out upon the examination of the party, or otherwise, the book should be rejected." (22 C. J., p. 873.) However, he does not show wherein the plaintiff's proof failed to comply with the rule contended for. The plaintiff's manager, Mr. Kanter, testified that he made the sales. While on the floor he made certain memoranda, which were later made into a formal statement which was then submitted to him for his approval. Thereafter the statement thus approved was copied in the sales book and the statement was mailed to the purchaser. Entries in the sales book were carried into the ledger. In proof of its case the plaintiff introduced the sworn testimony of Mr. Kanter and corroborated it by also introducing the statements, entries in sales book, and its ledger account. From these facts it appears that the plaintiff introduced its "original entries" and its "first permanent records of the transactions" and not otherwise. Speaking of the question involved, in *Chan Kiu Sing* v. *Gordon*, 171 Cal. 28, at page 31 [151 Pac. 657], Mr. Justice Shaw, speaking for the court, said: "In order to lay the foundation for the admission of such evidence it must be shown that the books in question are books of account kept in the regular course of the business, that the business is of a character in which it is proper or customary to keep such books, that the entries were either original entries or the first permanent entries of the transactions, that they were made at the time, or within reasonable proximity to the time, of the respective transactions, and that the persons making them had personal knowledge of the transactions or obtained such knowledge from a report regularly made to him by some other person employed in the business whose duty it was to make the same in the regular course of business." We do not see wherein, if at all, the rule as stated was not followed by the trial court.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.