[S. F. No. 1075.   Department Two.—March 18, 1899.]

HANS G. KUHL, Respondent, v. HELEN KUHL, Appellant.

DIVORCE—EXTREME CRUELTY—EVIDENCE—PLAINTIFF NOT CORROBORATED.
   A divorce cannot be granted upon the uncorroborated testimony
   of the plaintiff; and acts of extreme cruelty testified to by the
   plaintiff without the slightest corroboration, and denied by the
   defendant, are not proved by evidence upon which the court
   could base a finding for the plaintiff.

ID.—CHARGE AFTER DESERTION—STEALING WIFE'S PROPERTY—SPECULA-
   TION IN STOCKS—ABSENCE OF MALICE.—A charge by the wife against
   the husband of stealing her diamonds and sealskin sacque, made
   after his desertion of her, cannot form any justification or ex-
   cuse for the desertion; and where the evidence indicates that the
   wife's charge was not malicious, but was made in the reason-
   able belief that he had taken the property to raise money thereon
   with which to speculate in stocks, after she had declined his
   request that she would raise money for that purpose, and there
   is evidence that the husband acknowledged that he deserted his
   wife by reason of disappointment in money matters, and that
   he supposed she was wealthy and would let him have money, the
   charge made by the wife after his desertion of her does not
   amount to extreme cruelty.

ID.—EXTREME CRUELTY—QUESTIONS OF LAW AND FACT.—What consti-
   tutes extreme cruelty, as a cause of divorce, is matter of law;
   but whether the evidence shows such conduct is a question of
   fact. Ordinarily, what constitutes extreme cruelty is a mixed
   question of law and fact; and where the evidence, assuming it
   to be true, is not legally sufficient, the court may so decide as a
   question of law.

ID.—JUDGMENT UPON MERITS—DISMISSAL—RES ADJUDICATA.—A judgment
   rendered upon the merits after the trial of an action for divorce,
   dismissing the action, in the usual form in equitable actions, does
   not permit of a relitigation of the issues, unless the dismissal
   is expressly made without prejudice to a new action.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco and from an order granting a new
trial.   D. J. Murphy, Judge rendering judgment.   George H.
Bahrs, Judge granting new trial.

The facts are stated in the opinion.

Naphtaly, Freidenrich & Ackerman, for Appellant.

J. H. Henderson, for Respondent.

HAYNES, C.—Action for divorce on the ground of extreme cruelty. The action was tried before Hon. D. J. Murphy, late judge of the superior court, who found from the evidence that the defendant was not guilty of extreme cruelty toward the plaintiff, and did not inflict upon him grievous mental suffering, and, as no affirmative relief was sought by defendant, judgment of dismissal was entered. Plaintiff moved for a new trial upon the ground that the evidence was not sufficient to justify the findings, and that the decision was against law. A bill of exceptions was settled by Judge Murphy, and the motion was afterward heard before Judge Bahrs, who made an order granting a new trial, and from that order the defendant appeals.

The complaint alleged that the parties intermarried July 23, 1895; that on divers occasions the defendant was guilty of extreme cruelty toward the plaintiff, and particularly as follows: "In the month of April, 1896, she had angrily upbraided the plaintiff, and said to him, 'God curse your soul,' and on many occasions in or about said month of April, 1896, she called him a 'damned Dutchman' and a 'loafer.' In the month of May, 1896, the defendant falsely and maliciously accused plaintiff to sundry of his business acquaintances and friends of having stolen diamonds and a sealskin sacque"; that said acts and conduct inflicted upon plaintiff grievous mental suffering.

The answer put in issue all these allegations. The plaintiff testified that defendant used toward him the epithets alleged in the complaint, and the defendant testified as explicitly that she did not, and that she did not use toward the colored servant girl any such language as plaintiff testified to. As to these matters the plaintiff was not corroborated in the slightest degree, and hence, as to them, there was no evidence upon which the court could base a finding for the plaintiff. "No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties." (Civ. Code, sec. 130.)

As to the allegation in the complaint that "in the month of May 1, 1896, the defendant falsely and maliciously accused plaintiff to sundry of his business acquaintances and friends of

having stolen diamonds and a sealskin sacque," a somewhat fuller statement is required.

These parties were married in July, 1895. The epithets of which the plaintiff complained he testified were used in the following March, and on May 13, 1896, he left the defendant, and did not afterward return, and informed two of defendant's friends, whom she had sent to ascertain the cause of his absence, that he would never return or live with her again. While living together they occupied defendant's house. At the time plaintiff left her defendant was sick in bed and had been for about ten days. She missed her diamonds and sacque soon after the plaintiff left, and about the last of May she called on Mr. Hadley, a personal and intimate friend of the plaintiff, and, in the language testified to by him, told him "that her husband had left the house where they were living, and had taken her diamonds and also her sealskin sacque. She asked me if he had pledged them to me or whether he had tried to get a loan upon them from me. I told her no; that I did not believe he had taken them; that I did not believe Kuhl capable of doing such a thing."

Mr. McKenzie, the other friend of plaintiff, on whom defendant called, put the matter in a somewhat different light. He testified: "She told me that her husband had left her home and had stolen her diamonds and also her sealskin sacque."

In relation to this matter, the defendant testified that at the time plaintiff left her she was sick in bed, and had been for ten days; that he did not tell her he was going to quit; that they had no quarrel; that she observed him going to a drawer where she kept her diamonds, and that her diamonds and sacque disappeared when he left; that about the 5th of May he said there was a good market for stocks and that "if he had some money he could make a barrel of money"; that he wanted her to mortgage the furniture to go into the speculation, but she declined to do so. Taking these facts in connection with her inquiry addressed to the witness Hadley, whether the plaintiff had pledged her property to secure a loan, or whether he had applied to him for a loan, they tend strongly to show that she believed he had taken them for the purpose of raising money with which to speculate in stocks, and that her statement and

inquiry were not malicious, nor, from her standpoint, without excuse or palliation. It should be remembered that these statements to plaintiff's friends, Hadley and McKenzie, were made after plaintiff had deserted defendant, and therefore formed no justification or excuse for the desertion; nor did he give to either Mrs. Salmon or Mr. Ward, who were sent to him by the defendant to learn the cause of his absence, any hint that he left her because of any cruel treatment, but assigned as the reason for leaving her that he was disappointed in money matters; that he supposed she was wealthy and would let him have money. The plaintiff was recalled in rebuttal, and testified that he did not ask the defendant for money to speculate in stocks, that he did not say that he had married her for her money, or that he would return upon payment of ten thousand dollars; but this was the full extent of his denial of the testimony of those witnesses.

The rule determining what conduct constitutes extreme cruelty as a cause of divorce is matter of law; but whether the evidence shows such conduct is a question of fact to be decided upon the trial. (*Janvrin v. Janvrin*, 58 N. H. 144.) Ordinarily, what constitutes extreme cruelty is a mixed question of law and fact, and where the evidence, assuming it to be true, is not legally sufficient, the court may so decide as a question of law. As to the language alleged to have been used by the defendant to the plaintiff, prior to the separation, the burden was upon the plaintiff to prove it. He testified that it was used; she, that it was not. No corroboration was attempted by the plaintiff, while the testimony of Mr. Ward, a boarder in the house during all the time these parties lived together, tended strongly to corroborate the defendant. Those acts of alleged cruelty, and the other relating to the taking of the diamonds and sacque, were wholly distinct in character, and were separate in point of time by about two months. If, therefore, there was any extreme cruelty inflicted by the defendant upon the plaintiff, it must be predicated wholly upon the last of these alleged acts. Under the facts in this case, was that "extreme cruelty"? That it hurt the plaintiff's feelings may be conceded. That it inflicted upon the plaintiff "grievous mental suffering"—that which the statute makes a ground of divorce—is a conclusion

the law will not draw from the evidence. The marital relation is one of great public concern. The law does not tolerate contracts in restraint of marriage, nor permit the marriage relation to be dissolved at the whim or caprice of the parties, or for causes which, in view of public policy, it is better the parties should bear, even though it be with discomfort. Whether the plaintiff, who had deserted defendant, and not only announced his determination never to return, but affirmed that determination by bringing an action for divorce, could maintain it for an act of extreme cruelty occurring after the desertion, which was less than a year before suit was brought, need not be decided. Certainly it was a material fact in the case to be considered by the court in determining whether the words spoken would not have been more likely to cause anger than mental anguish.

Appellant also contends that the court erred in not entering a final judgment that the plaintiff take nothing by his action, instead of a simple judgment of dismissal, which he seems to think is not a bar to a relitigation of the issues. If that be true, the judgment is more favorable to the plaintiff than it should have been, and he is not injured. But the judgment is upon the merits, and in the usual form in equitable actions, in which, if it is intended to permit the plaintiff to relitigate the issues, or any of them, the right is preserved by adding "without prejudice to a new action."

I advise that the order appealed from be reversed.

Gray, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed.

Temple, J., McFarland, J., Henshaw, J.