[Civ. No. 379.  Third Appellate District.—October 19, 1907.]

# ROYAL F. KENNISTON, Respondent, v. MARGARET KENNISTON, Appellant.

DIVORCE—DESERTION—OFFER OF RECONCILIATION—PLAINTIFF'S EVIDENCE NOT CORROBORATED.—A divorce cannot be granted for desertion where the plaintiff's testimony to a separation of the parties by mutual consent, and to an offer of reconciliation, and to provide a home for defendant, was wholly uncorroborated.

ID.—TIME OF OFFER.—If the plaintiff deserted his wife originally, the offer of reconciliation is too late if made after the statutory period for a divorce on that ground has elapsed, unless prior to the offer the long delay of the wife to seek a divorce establishes the presumption of her acquiescence with intent to continue the marriage relation.

ID.—GOOD FAITH OF OFFER—CHARACTER OF HOME NOT SHOWN.—An offer of a home and the refusal of the wife to accept it cannot constitute desertion by the wife, where there is no evidence of the character of the home to which he invited her. He must show the utmost good faith, and that he has chosen a reasonable place or mode of living, before he can insist that his wife is in default, or invoke successfully the power of the court. This material element must be proved, and cannot rest upon presumption, especially in view of the testimony of the wife as to the reason why she had no confidence in the plaintiff's offer.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order of the Superior Court of Fresno County.  H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

A. M. Drew, for Appellant.

Snow & Freeman, for Respondent.

BURNETT, J.—The appeal is from a judgment of divorce and an order denying the motion for a new trial.

The only point made by appellant that we deem worthy of serious consideration is that there is a want of sufficient corroboration of plaintiff's testimony to justify the judgment

6 Cal. App.—42

of the court. It is not contested that the plaintiff in 1891 left the defendant in the state of New York, where they had been residing for years; without informing her of whither he expected to go he went to Haverhill, Massachusetts, remaining there only a short time; he then came to Fresno, California, and he has resided there ever since. Defendant was in ignorance of plaintiff's whereabouts for eight or ten years. She finally applied to the pension department of the government for a portion of the pension which was being paid to plaintiff. Her application was based upon the contention that plaintiff had deserted her. She established her claim to the satisfaction of said department, and, according to its rules and regulations, one-half of said pension was awarded to her. Plaintiff's opposition to her said application conveyed to her the first intimation of where he was residing. Shortly thereafter, on December 31, 1901, he sent her a letter asking if she would come and live with him in Fresno, and if so he would send the money for transportation. She received the letter, but made no reply to it. Again, on February 3, 1903, he wrote her a similar letter, which she did not answer. On March 3, 1903, plaintiff began an action for divorce against defendant on the ground of desertion. Defendant set up a recriminatory plea of desertion and willful neglect. The judgment, rendered September 18, 1903, was "that the prayer of plaintiff's complaint be denied and that the defendant herein have judgment for costs." October 28, 1903, he again wrote her to come to Fresno, inclosing money to pay her traveling expenses. He wrote various letters after that of similar import. He received only one letter from her. It does not appear in the transcript, but from his allusion to its contents it seems that she complained of great affliction from rheumatism. On December 23, 1904, he began another action against his wife for divorce on the ground of desertion, in which he was more successful than in his former suit.

One of the findings of the court is the following: "That plaintiff and defendant separated in the state of New York about the eleventh day of August, 1891, by mutual consent, and ever since said separation continued to live separate and apart by mutual consent until the second day of November, 1903, upon which said date plaintiff revoked said consent to said separation and in good faith sought a reconciliation and restoration with and to defendant, but that defendant on said

last-mentioned date refused said offer on the part of plaintiff to said reconciliation and restoration, ever since has and does now so refuse.'' The finding that said separation of August 11, 1891, was by mutual consent is based entirely upon the testimony of plaintiff. He is not corroborated by any other witness nor by any circumstantial evidence. The defendant's testimony is that plaintiff abandoned her without cause; she says: "He arose in the morning and ate breakfast; hitched up the horse and asked my sister to drive him to town, about four miles. After getting into the wagon he said to me: 'Now, look out for yourself, Maggie, for you will have nobody to look out for you.' Two or three days before going away he threatened to desert me and go to Haverhill, and said he might afterward go to California.'' She further declared positively that he went away without her consent.

Upon the important issue, then, as to whether the separation was by mutual consent or constituted an abandonment of defendant by plaintiff, the evidence was sharply conflicting, and while the preponderance seems to favor appellant's position, yet the finding is sufficiently supported according to the rule of conflicting evidence that prevails in ordinary cases. But section 130 of the Civil Code provides that "no divorce can be granted upon . . . the uncorroborated statement, admission or testimony of the parties.'' The vital question here relates to the effect to be given to this provision of the statute. "Corroborative evidence is additional evidence of a different character to the same point.'' (Code Civ. Proc., sec. 1839.)

It is difficult, of course, by a general rule to prescribe the extent of the corroborative evidence required to satisfy the statute. But if it is clear that there is no such evidence, the duty of the court to deny the divorce is plain if regard is to be paid to the legislative will. The public is greatly interested in the maintenance of the marital relation, and it should not be dissolved at the whim or caprice of the parties nor without the complete sanction of the law. (*Kuhl* v. *Kuhl,* 124 Cal. 58, [56 Pac. 629].)

As an illustration of the application of the rule we find the supreme court holding in *Hayes* v. *Hayes,* 144 Cal. 627, [78 Pac. 19], that the testimony of the husband was not sufficiently corroborated by the testimony of another witness as to the confession of the wife, the court, through Commissioner

Chipman, stating: "But the confession of the wife, as well as the testimony of plaintiff, required corroboration, and there was none."

Again, in *Berry* v. *Berry*, 145 Cal. 787, [79 Pac. 532], it is said: "The law, however, declares in very explicit terms that no divorce can be granted upon the uncorroborated statement of either of the parties to the action. And *doubts* should be resolved *against divorce* instead of for it."

In *Gunther* v. *Gunther* (N. J. Ch.), 57 Atl. 1015, it is held, as stated in the syllabus, that: "A divorce on the ground of desertion cannot be had, the only corroboration of complainant's testimony of a demand that defendant come and live with him where he had moved and her refusal being the testimony of a witness that at a time less than two years before the filing of the bill he heard complainant ask her why she would not come and live there, and that she answered no."

In *Corder* v. *Corder* (N. J. Ch.), 59 Atl. 309, the court of chancery of New Jersey says: "The original separation of the husband and wife in this case and the circumstances of it are proved only by the oath of the petitioner. The corroboration of petitioner as to the fact that subsequent to the separation the wife lived alone is not a sufficient corroboration of the desertion charged. It proved a continuance of a separation, but not that the original separation was a desertion." To substantially the same effect are *Sabin* v. *Sabin* (N. J. Ch.), 39 Atl. 627, and *Hunt* v. *Hunt* (N. J. Ch.), 59 Atl. 642.

On the contrary, as tending to show the liberality of the supreme court's interpretation of the statute, respondent refers to *Baker* v. *Baker*, 13 Cal. 87, *Smith* v. *Smith*, 119 Cal. 191, [48 Pac. 730, 51 Pac. 183] , *Andrews* v. *Andrews*, 120 Cal. 186, [52 Pac. 298], and *McMullin* v. *McMullin*, 140 Cal. 112, [73 Pac. 808].

In the Baker case it is said: "The object of the rule is to prevent collusion between the parties. Without some limitation of this kind, it would be in the power of the parties to obtain a divorce in all cases. The public is interested in the marriage relation and the maintenance of its integrity, as it is the foundation of the social system and the law wisely requires proof of the facts alleged as the ground for its dissolution."

It may be conceded that the primary object of the rule is correctly stated, but in some of the cases due weight seems

not to  have been accorded the consideration that the legislature has pointed out the way by which this object is to be accomplished.  It is certainly an erroneous assumption that to justify the court in awarding plaintiff a divorce it is only necessary for it to be satisfied that there is no collusion between the parties and that the allegations of the complaint are true.  Of these facts the court must be satisfied, but that conviction must rest in part at least upon corroborative evidence as provided by the statute.  There seems to be no commanding reason why there should be any abatement of the rigorous requirement of the rule or any attempt by judicial action to enlarge the door of escape from the conjugal yoke and its corresponding obligations.  It would subserve no useful purpose, and this is not the occasion to descant upon the menace to our civilization afforded by the frequency and facility with which divorces are secured under our practice, but we deem it not improper to say that there should be no relaxation of a rule designed to render somewhat less facile the improper extinguishment of a relation that means so much to the state.

In the Smith and Andrews cases, *supra,* there was corroborative evidence.  In the latter, as stated in the syllabus, it is held: "When a divorce is sought on the ground of extreme cruelty consisting of successive acts of ill-treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff, but it is sufficient corroboration if a considerable number of important and material facts are testified to by other witnesses, or if there is other evidence circumstantial or direct which strongly tends to strengthen and confirm the statements of the plaintiff." It is clear that if "a considerable number of important and material facts" showing cruel treatment are proven, nothing more should be required to establish such a charge.  In the McMullin case, also, there was substantial corroborative evidence.  This is apparent from the statement of the court that "the attitude and declarations of the defendant to various parties at the time of and subsequent to the offer of April 10, 1895, are in themselves a sufficient corroboration." There was at least material testimony of other witnesses in addition to that of plaintiff.

It is contended, however, that said finding is immaterial for the reason that whether plaintiff originally was at fault or not, and whether the separation was with or without con-

sent, after the lapse of so many years if he sought reconciliation in good faith and it was refused by defendant he could successfully maintain an action for divorce on the ground of desertion. The husband did not seek to return to the wife's domicile, but this is unimportant, as he pursued the course suggested by section 103 of the Civil Code, which provides that ''the husband may choose any reasonable place or mode of living and if the wife does not conform thereto it is desertion.'' Is it true that if plaintiff deserted his wife he can thereafter place her in default and be entitled to a divorce on the ground of her desertion? Nelson, in his work on Divorce and Separation, paragraph 75, says: ''The offer to return is ineffectual if made after the statutory period has elapsed. However willful the leaving may have been or however destitute of reasonable cause, it is not a ground of divorce unless the separation has continued for the statutory period. The door of repentance and return must be kept open during that period. But after the statutory time has elapsed the injured party has a cause for divorce. If such a party refuses to renew cohabitation *it is not desertion.* For to renew cohabitation is to condone the offense, and the law does not enforce condonation. This refusal of an offer to return will not bar the divorce to which the party is already entitled.'' And in *Vosburg* v. *Vosburg,* 136 Cal. 204, [68 Pac. 698], in speaking of the recriminatory plea of desertion set up by the husband in defense of the wife's complaint for divorce on the same ground, the court, speaking through Mr. Justice Henshaw, says: ''But even if the offer had been made in good faith and if the home provided had been a suitable one, still, as has been said, it came too late to operate against her perfected cause of action.'' Nelson, though, seems not to have been considering the contingency where the injured party's cause of action is barred by the statute of limitations, and the remark quoted from the Vosburg case is undoubtedly sound as applied to the facts therein revealed. But here, assuming that the husband deserted the wife, she could not maintain her action for divorce on account of her long delay— at least, unless satisfactorily explained. This is covered by section 124 of the Civil Code, which provides that the divorce must be denied if not brought for certain causes within a specified time, and in all other cases where there is an unreasonable lapse of time before the commencement of the

action, and in section 125 it is provided that "unreasonable lapse of time is such a delay in commencing the action as establishes the presumption that there has been connivance, collusion or condonation of the offense or full acquiescence in the same with intent to continue the marriage relation, notwithstanding the commission of such offense." The delay of the wife for more than ten years to seek a divorce, and then only in response to plaintiff's complaint, establishes the presumption of her "acquiescence with intent to continue the marriage relation."

In the McMullin case, *supra,* it is stated, through Mr. Justice Angellotti, that the injured party's right of action must not be barred by the statute in order to constitute a defense to such a cause for divorce as the plaintiff presents in the case at bar. It is observed that our law does not contemplate a continuance of the marital relation with the parties living separate and apart against the will of one of them. The conclusion is based upon the assumption that our law is humane and never closes the door of hope to one penitentially and in good faith offering reparation and seeking reconciliation and restoration. It must be admitted, though, that there is force in appellant's contention that the language of section 102 of the Civil Code plainly implies that desertion may be cured by the party at fault only within a time "*before* the expiration of the statutory period required to make the desertion a cause for divorce." But conceding the soundness of respondent's contention in this regard, still the difficulty is that there is not sufficient evidence within the rule to establish the desertion of appellant as contemplated by said section 103 of the Civil Code. The evidence in support of his claim that his wife was in default and properly chargeable with desertion was as follows: He testified that he had chosen Fresno for his home; that he had resided there about twelve years; that his wife had never been in Fresno; that he had written several letters and sent her $130 to come there with; and that he had received only one reply to said letters. The letters were introduced in evidence, and it was admitted that the defendant had received them. It is plain that plaintiff could not corroborate himself. Such a notion is entirely foreign to a proper conception of corroborative evidence. One witness may be corroborated by another witness or by a presumption or by circumstantial evidence. But it is a misuse of the term

to say that one portion of his testimony is corroborated by another. So his testimony as to the contents of the letters is not corroborated by introducing the letter themselves. The letters, of course, are the best evidence of their contents, but they are simply the written declarations of the plaintiff, and it would be rather startling to hold that a party may corroborate statements made under oath by testifying as to declarations that he has made not under oath. Respondent says this evidence is "better than it would have been had plaintiff spoken to defendant the very language which he wrote and handed her the $130 which he sent, in the presence of witnesses, for no witness or number of witnesses could have been as explicit and told the conversation exactly as it was." But respondent overlooks the fact that it is not altogether a question of "better evidence," but whether there is corroboration as required by the statute. But conceding that there is sufficient evidence as to the offer of a home and defendant's refusal to accept it, there is no evidence whatever as to the character of the home to which plaintiff invited defendant. He must show that he had chosen a reasonable place or mode of living before he can insist that his wife is in default. No presumption can be indulged in that behalf in favor of plaintiff. He must show the utmost good faith in order to invoke successfully the power of the court. One of the important facts tending to show good faith is that he has urged his wife to come across the continent to a home reasonably suitable to their station in life. It would be, in our opinion, an arbitrary exercise of power to hold that this material element in plaintiff's case need not be proven or that it may rest upon presumption. It is especially important in view of the testimony of the wife as to the reasons why she had no confidence in the sincerity of her husband's offer. It may be difficult for the husband to prove his case as the statute requires, on account of the fact that his wife is residing thousands of miles away where he left her many years ago, but that is no reason why the court should ignore a salutary rule of evidence of which the interests of society demand a strict enforcement.

The judgment and order denying the motion for a new trial are reversed.

Chipman, P. J., and Hart, J., concurred.