(May 26, 1908.)

# TILLMAN BELL, Respondent, v. M. ALBERTA BELL, Appellant.

[96 Pac. 196.]

DIVORCE—MOTION TO DISMISS APPEAL—INSUFFICIENCY OF SPECIFICATION OF ERROR—DESERTION—INSUFFICIENCY OF EVIDENCE TO ESTABLISH—CORROBORATION—SEPARATION—MUTUAL CONSENT—OFFER OF HOME—CHARACTER OF—REAL ESTATE—TITLE TO—NOT DETERMINED WHEN DIVORCE NOT GRANTED.

1. A specification of insufficiency of the evidence which designates some particular fact, and avers that it is not justified or sustained by or is contrary to the evidence, is sufficient.

2. *Held*, that the evidence is not sufficient to establish wilful desertion that had continued for one year prior to the commencement of this action.

3. *Held*, that the evidence fails to establish the fact that the plaintiff offered to furnish the defendant a suitable home or to support her.

4. If a husband fails to furnish his wife a home suitable to their condition, and reasonable support, and she is compelled by necessity to leave him and seek employment whereby to earn her own support, without intention of deserting him, such a leaving is not wilful desertion under the provisions of sec. 2460, Rev. Stat. In such case, the wife is an involuntary actor and acts because of necessity and on account of the bad conduct of the husband.

5. Under the provisions of sec. 2471, Rev. Stat., a divorce cannot be granted upon the uncorroborated statement, admission or testimony of the parties.

6. Under the provisions of that section, the statement, admission or testimony of either of the parties to the action may be admitted in evidence, but is not of itself sufficient corroboration of the testimony of the other to the facts introduced to establish the main issue in the action, for under the provisions of said section, the statement, admission or the testimony of both of the parties to the action requires some extrinsic corroboration.

7. The provisions of that section do not prohibit the introduction of statements, confessions and admissions of the parties, but only provide that a decree shall not be granted on them alone.

8. The provisions of said sec. 2471 are mandatory, and there must be some other and different corroboration of the main facts in issue than the statement, admission or testimony of the parties.

9. Where an issue in regard to the ownership of certain real estate is put in issue in an action for a divorce and the divorce is not granted, such issue will not be determined.

(Syllabus by the court.)

APPEAL from the District Court of Second Judicial District for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action for divorce and to determine title to certain real estate. Judgment for plaintiff. *Reversed.*

Daniel Needham, for Appellant.

There is not a particle of evidence as to desertion by defendant, as contemplated under sec. 2460, Rev. Stat., but on the contrary, the evidence shows that the defendant's going was brought about by the acts of the plaintiff, and that she was and is ready and willing to return at any time when plaintiff will provide a home for her and their son. (Bishop on Marriage and Divorce, sec. 1737 et seq.; *Pidge v. Pidge,* 3 Met. 257, 261; *Smith v. Smith,* 12 N. H. 80; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938.)

There is nothing in all the evidence but the statements of the parties to the action; not a word of testimony to corroborate the testimony of the plaintiff in this action, and under the law of this state, a divorce cannot be granted on such testimony. (Sec. 2471, Rev. Stat.; *Kenniston v. Kenniston* (6 Cal. App. 657), 92 Pac. 1037; *Kuhl v. Kuhl,* 124 Cal. 58, 56 Pac. 629; *Hayes v. Hayes,* 144 Cal. 627, 78 Pac. 19; *Berry v. Berry,* 145 Cal. 787, 79 Pac. 532; *Gunther v. Gunther* (N. J. Ch.), 57 Atl. 1015; *Corder v. Corder* (N. J. Ch.), 59 Atl. 309; *Sabin v. Sabin* (N. J. Ch.), 59 Atl. 627; *Hunt v. Hunt* (N. J. Ch.), 59 Atl. 642; *Hagle v. Hagle,* 74 Cal. 608, 16 Pac. 518; *Haley v. Haley,* 67 Cal. 24, 7 Pac. 3; *Briggs v. Briggs* (N. J. Ch.), 59 Atl. 878; *Edwards v. Edwards,* 69 N. J. Eq. 522, 61 Atl. 531; *Meier v. Meier,* 68 N. J. Eq. 9, 59 Atl. 234; *McElhaney v. McElhaney,* 125 Iowa, 333, 101 N. W. 93; *Herold v. Herold,* 47 N. J. Eq. 210, 20 Atl. 375, 9 L. R. A. 696.)

F. E. Fogg, and C. H. Nugent, for Respondent.

To say in an attempted specification of insufficiency of the evidence that the third finding of fact is contrary to and unsupported by the evidence does not point out as required by the statute wherein the evidence is insufficient. (*Haight v. Tryon,* 112 Cal. 4-7, 44 Pac. 318; *Kumle v. Grand Lodge,* 110 Cal. 204-213, 42 Pac. 634; *Eddelbuttel v. Durrell,* 55 Cal. 277; *Spotts v. Hanley,* 85 Cal. 155, 24 Pac. 738; *Menk v. Home Ins. Co.,* 76 Cal. 50, 9 Am. St. Rep. 156, 14 Pac. 937, 18 Pac. 117.)

The desertion is made out when it is shown, as in this case, that the absence commenced and has continued during the prescribed period, without the consent and against the objection of the other party. (*Benkert v. Benkert,* 32 Cal. 467; *Sisemore v. Sisemore,* 17 Or. 542, 21 Pac. 820.)

When all presumptions of collusion are repelled, and, from circumstances, it appears reasonably certain that the confession made is true, the ground of the rule of exclusion in cases of divorce is obviated, and there can be no reason for refusing consideration to the confession. (*Baker v. Baker,* 13 Cal. 88-94; *Venzke v. Venzke,* 94 Cal. 225, 29 Pac. 499; *Smith v. Smith,* 119 Cal. 183-191, 48 Pac. 730, 51 Pac. 183.)

SULLIVAN, J.—This action was brought to obtain a divorce on the ground of desertion and to have the appellant decreed to hold in trust certain real estate consisting of about 200 acres of land, situated near the city of Lewiston, Nez Perce county. It is alleged in the complaint that on or about the 1st day of March, 1903, the defendant, disregarding the solemnity of her marriage vow, wilfully and without cause, deserted and abandoned the plaintiff, and ever since has continued to wilfully and without cause desert and abandon the plaintiff and live separate and apart from him without sufficient cause and without any reason and against his will and without his consent.

The allegations of the complaint in regard to said real estate are that the plaintiff was owner in fee and possessed of said real estate, describing it, and also of said water right,

describing it; that on or about July 20, 1901, the plaintiff voluntarily conveyed said real estate to defendant as he was about to leave the state to be absent for a year; that he conveyed it to his said wife to avoid the inconvenience and delay of administration on his estate in case of his death during his absence; that the defendant then and there promised upon plaintiff's return she would reconvey said property to him; that during the month of July, 1902, plaintiff returned from a trip to Old Mexico and met the defendant in the city of San Francisco, state of California, and at that time she executed and delivered to plaintiff a deed, reconveying to him said real estate; that said deed so executed and delivered to plaintiff was placed in a receptacle in the home of the plaintiff and defendant in Nez Perce county; that after defendant had deserted plaintiff, the plaintiff, upon making search for said deed, discovered that it had disappeared; that, upon information and belief, the defendant obtained possession of said deed and withholds the possession from plaintiff; that said real estate is community property of the plaintiff and defendant, and that the title thereto now stands on the records of said county in the name of the defendant, and is held in trust by her for the plaintiff as his community property and that she refuses either to deliver to him said deed or to reconvey said real estate to him, in accordance with the conditions of said trust; that defendant wrongfully claims to be the owner of said property in fee, and threatens to sell and convey the same in violation of said trust. The prayer of the complaint is that the bonds of matrimony be dissolved and the defendant be decreed to hold the title to said real estate in trust for plaintiff and that she be decreed to reconvey the same to him; that an injunction issue restraining her from conveying said property or encumbering it.

To this complaint the defendant filed her answer, admitting some of the allegations, denying others, and alleges some affirmative matter. She denies that she has ever deserted or abandoned plaintiff; denies that said real estate and water right was conveyed to her to be held in trust for plaintiff, and denies specifically each and every of the allegations of the

complaint in regard to her holding said property in trust, and avers that on July 20, 1901, the plaintiff duly conveyed to her, by warranty deed, all of the property mentioned in the complaint, without any qualifications whatsoever different from those contained in the deed, and that thereafter she filed said deed for record in the office of the county recorder of said county; admits that in or about the month of July, 1902, the plaintiff returned from Mexico and met the defendant in said city of San Francisco, but denies that at that time or at any time she executed and delivered to plaintiff any deed reconveying to him said real estate or water rights, and avers and admits that at said last mentioned time the plaintiff then and there promised and agreed that he would, on behalf of the defendant, and for her benefit and account, secure a loan of money sufficient to discharge and pay certain indebtedness which had been incurred by the defendant during the absence of plaintiff in and about her efforts to earn sufficient means with which to support herself and the child of plaintiff and defendant, which indebtedness was then due and owing; that for the purpose of raising said money with which to pay said indebtedness, this defendant then and there consented that the same might be borrowed upon the security of her said real estate; that plaintiff then and there agreed to go to the city of Lewiston, state of Idaho, and there negotiate a loan for the purpose of discharging said indebtedness, and then requested the defendant to place the title to said real estate in his name in order that he might be able to execute a mortgage sufficient to secure the repayment of said borrowed money, and plaintiff then and there undertook and promised that if defendant would so convey said property to him for that purpose, he would proceed to the city of Lewiston and secure said loan of money; that if he failed to do so, the conveyance so to be made by defendant to him should not be recorded or take effect, but should be destroyed; that relying upon such promises of the plaintiff, she executed and delivered to plaintiff an instrument in writing which, in form, purported to convey the title to said property to the plaintiff, upon the express and distinct agree-

ment that it should not take effect excepting only for the sole purpose of enabling the plaintiff to mortgage said property for the purpose of securing such loan and in case of his failure to procure the loan, said conveyance should not take effect for any purpose whatever; that plaintiff thereafter departed for said city of Lewiston; that he wholly failed and neglected to procure said loan or any loan or to borrow any money with which to discharge said indebtedness; denies that she has ever deserted plaintiff and avers that plaintiff had continuously and for more than three years prior to the commencement of this action wilfully and wholly failed and neglected to support this defendant or their child or to provide them with the common necessities of life or with a home, and that by reason of such failure and neglect, defendant, for the purpose of procuring means to support herself and their child, was compelled to and did by and with the consent of plaintiff, leave Nez Perce county in search of employment, and went to the city of San Francisco and there secured employment, and ever since has continued earning by such work the means with which to support herself and their child, and the plaintiff has at no time contributed anything to the support and maintenance of defendant or their child, but has from time to time received from defendant out of her earnings contributions toward his support and maintenance; denies that any such deed as is alleged in the complaint herein to have been executed by this defendant to plaintiff or that any deed whatsoever was executed by her, otherwise than as stated in her answer; and denies that she obtained possession of said alleged deed or of any deed belonging to plaintiff.

For a separate and further defense, defendant avers, among other things, that the issue of said marriage is one son, aged fourteen years, who has resided with the defendant continuously, and whom she has always had to maintain, educate and support and is now maintaining and educating him; that said real estate and water rights, for valuable consideration, was conveyed by plaintiff to defendant; that at the time of execution and delivery of said deed, defendant was in the quiet and

peaceable possession of said premises, and has since that date paid all taxes assessed against said premises.

Upon the issues thus made, the cause was tried by the court and findings of fact and judgment were entered dissolving the bonds of matrimony and decreeing that the defendant holds the said real estate in trust for plaintiff; that the same is community property, and that the purported conveyance of 1902 reconveyed said real estate to the plaintiff and that said real estate be equally divided between the parties hereto.

A motion for a new trial was denied and this appeal is from the judgment and order denying a new trial. Numerous errors are assigned, among them the insufficiency of the evidence to sustain certain findings made by the court. At the outset it is contended by counsel for respondent that the specification of the insufficiency of the evidence to sustain certain findings does not specify the particulars in which the evidence is alleged to be insufficient, and for that reason such specification cannot be considered on this appeal. The first specification of insufficiency of the evidence is as follows: "The third finding of fact is contrary to and unsupported by the evidence, the evidence showing conclusively that the defendant never at any time or at all deserted the plaintiff." The question of desertion was the main issue involved in the suit. All of the evidence in the case other than that relating to the property rights of the parties was directed to that issue.

By the third finding of fact the court found that more than one year before the commencement of this action the defendant wilfully and without cause deserted and abandoned plaintiff, and ever since has continued to live separate and apart from him without sufficient cause and without any reason, against his will and without his consent. The fact of desertion is particularly set out in said finding, and that is the fact referred to in said specification of the insufficiency of the evidence. This court has held that specifications of insufficiency of the evidence, which designate some particular fact and aver that it is not justified by nor sustained by, or is contrary to the evidence, are sufficient. (*Bernier v. Anderson,*

8 Ida. 675, 70 Pac. 1027; *Palmer v. Northern Pac. Ry. Co.,* 11 Ida. 583, 83 Pac. 947.) Said specification of the insufficiency of the evidence is sufficient to authorize this court to review it.

The court will now consider the assignments of error going to the sufficiency of the evidence to sustain the findings of the court. The question of desertion is the main issue involved in the case. Sec. 2457 of the Revised Statutes defines the grounds on which divorces may be granted, and among them is that of wilful desertion. Sec. 2460, defines wilful desertion as follows: "Wilful desertion is the voluntary separation of one of the married parties from the other with the intent to desert." Sec. 2463, provides that wilful desertion must continue for one year before it is a ground for divorce. In order to recover in this case, the appellant must show that such wilful desertion was voluntary and continued for a period of one year, with intent to desert, prior to the commencement of this action. The ultimate fact of wilful desertion must be established by probative facts. The first question presented is, whether the evidence establishes wilful desertion for a period of one year.

It appears from the record, first, that the respondent left his home at Lewiston and went to Old Mexico in July, 1901, and left his wife and son on the land referred to; that in the spring of 1902, his wife left there and went to San Francisco, California; that he returned from Mexico in July, 1902, and met his wife in San Francisco. Before going to Mexico respondent conveyed to the appellant 200 acres of land near the town of Lewiston. After he met her in San Francisco, in July, 1902, he testifies that she reconveyed the land to him, and that the deed was thereafter lost. The appellant testified that she executed some kind of a paper, whether a deed or a power of attorney, she was not sure which, of said land, under the agreement with the respondent that he would return to Lewiston and procure her a loan of $500, giving said land as security. It appears that respondent returned from San Francisco to Lewiston and failed to negotiate the loan of $500; that the appellant thereafter returned to Lewiston

and negotiated said loan and remained there until about March, 1903, when she returned to San Francisco and was engaged in business there to procure money to support herself and child, the husband doing nothing and furnishing nothing for that purpose. She did not return to Lewiston again until December, 1906. In the meantime, many letters passed between the respondent and appellant, some of which were introduced on the trial of this case.

It is contended by counsel for respondent that the appellant left his home and remained away during those years, from the spring of 1903, until this suit was brought on February 27, 1906, without his consent and against his will. Referring to the second time that she went to San Francisco, the respondent testified as follows: ''When she went to California the second time, she said the people down at the hotel where she had been working before, wanted her to take charge of the place again. I was here when she went. . . . . At that time I was on the ranch. She didn't go with my consent. Of course, I consented, in a way—I didn't want her to go but she was determined to go and I had to consent. She did not take the boy with her. It was probably six months after she went that she wrote me to send the boy. She said the schools were better. I don't remember whether she sent money for his fare; she might have sent $50 to pay the boy's fare. If she did, it has slipped my memory. I consented that he should go to her. I sent the boy to her and he has been with her ever since. I have never asked the boy to come back to me. I wanted them both to come back. At that time everything was mutually agreed upon and the boy went there because it was a better school and better advantages. . . . . There were no harsh words when she left. We had no trouble at all. The only harsh words we ever had was through our correspondence. . . . . I have not contributed anything toward her support. . . . . I did not send her any money to come to Lewiston at any of the times I claimed I sent for her. . . . . All this time while Mrs. Bell was in California it was perfectly agreeable to me, in fact, agreeable among us, that she should work and make money in order to take

care of herself. I didn't tell her very many times that it was agreeable to live separate. It was a fact that she continually wrote me that when I got things shaped up so I could support her, that she would come."

It would appear from the above-quoted evidence that the respondent was quite contented to have the appellant work and earn her own living and that of her son, as it appears from the record that he never furnished her any money for the maintenance of herself and son, unless it was a part of the money for which he sold pieces or parcels of said real estate that had been divided up into lots and blocks.

Respondent testified: "Everything was harmonious between Mrs. Bell and I up to the commencement of the sale of these lots. . . . . And when the sales of the lots commenced, the crisis came." Although earnestly requested to prepare a home for her and secure employment whereby he could earn sufficient to support herself and boy, there is nothing in the record to show that he did so or ever made any effort to do so. Although in many of appellant's letters to him she urged him most earnestly to secure employment whereby he could earn sufficient to give her and her son a home and support, the support of his wife and child seemed to have concerned him very little. As this condition of things existed for about two years, the appellant thereupon in 1904 wrote him, among other things, as follows: "As far as my coming home is concerned, I will come when you have a position of some sort so we can live, but I am not coming to exist only." And again she wrote him: "Very sorry you are so headstrong, for it means evidently the breaking up of our family. If you would go on and put in the grain and get a decent house to live in . . . . in time we could be all together again. . . . . It would be out of the question for me to leave here by the 15th, for mother is coming, and anyhow, where would we go to—some lodging-house? No, sir; I won't do it. You get a house for us, as I have said repeatedly, I will gladly come."

About a year after writing said letters, he having made no provision for the support of herself and boy, she wrote him

that she would not live in that way any longer, that she must and would be a free woman. She was evidently trying to spur the defendant on to do something. She desired to energize him sufficiently so that he would try to do something toward securing a home and support herself and son, but was evidently unable to move him. In some letters she writes in regard to separation, but these evidently were based upon the fact that in case he failed to furnish her a home and support for herself and son, she would insist upon a separation. She testified on the trial of the case as follows: "I have all along been willing and am willing to go back and live with the plaintiff provided he would give me a home and support, but I would have to have something tangible." I am satisfied that the statements in regard to separation in her letters to him were brought about by the acts of plaintiff himself, in his failure to furnish her a comfortable home and support, and that she stood ready and willing to return at any time when he would provide a home for her and her son. And in explanation as to why she wrote the letters referring to separation, she testified as follows: "Up to this time Mr. Bell had wholly failed to make any provision for my support or the support of our boy, and I had become satisfied that he would not do so in the future, and that I should therefore be compelled permanently to support myself and the boy. Under these circumstances I wrote the letters suggesting that a legal separation of some kind would be best."

We think the evidence considered as a whole sustains the truthfulness of her explanation as to why she wrote the letters referring to separation. A husband who fails, neglects or refuses to furnish his wife with a suitable home, according to his condition, and refuses to support her, is not in a position to successfully charge her with desertion if she leaves him and seeks employment whereby she may support herself.

In commenting upon the necessity of the case, Mr. Bishop, in his work on Marriage and Divorce, sec. 1737, vol. 1, laid down the following rule:

"The withholding of necessaries from a wife, by a husband who could furnish them, would be cruelty authorizing her

to abandon the cohabitation; for it would endanger her physical well-being. If he was not able to supply them, the circumstances would confer on her the authority in law to go where she could get them. In this latter case, his unavoidable lack of doing would not be cruelty, so it would not justify her in an irrevocable breaking off of the cohabitation. If she went away, meaning the separation to be permanent, she would thereby desert him. If her going was intended to be temporary, yet afterwards she determined to make it permanent, the new resolution would convert it into desertion from the time when it was formed; but so long as she acted on the necessity, purposing to return on its ending, she would commit no desertion.''

If a husband is lazy and shiftless and will work only at employment that he fails or neglects to get, his wife is perfectly justified in seeking employment by which she can support herself, and if she is compelled to leave him in order to do so, she is justified in doing that. A mining expert without a job and without money and with a wife and son to support is not justified in refusing to work at anything except his chosen business and thus compel his wife to support herself and child. During the years from 1903 to 1906, the business conditions of the country were such that there was work at remunerative wages for everyone who desired to work, and it does appear that respondent utterly failed to supply the appellant with a home and support and failed to furnish her any money, except that he sent her one-half of the proceeds of the sale of certain lots carved out of the real estate referred to in the complaint.

It is urged by counsel for respondent that when appellant returned to California in March, 1903, ''it was because she put the accumulation of dirty dollars above family ties and domestic duties.'' There is nothing in the record to warrant that statement, as the record clearly shows that she was ready and willing to return as soon as respondent would furnish her a home and support. It does show that she was willing to work to earn ''honest dollars'' with which to feed and educate the son. Respondent testified as follows: ''It is a

fact that she continuously wrote me that when I got things shaped up so that I could support her that she would come," and that "All this time while Mrs. Bell was in California it was perfectly agreeable to me, in fact, agreeable among us, that she should work and make money in order to take care of herself." It appears from the evidence that "family ties and domestic duties" rested as lightly upon respondent as upon his wife, and that it was very agreeable to him that she should earn dollars and support herself and son and educate the son. The evidence fails to show that during their years of separation he was earning sufficient to support his wife and child, or that he offered her a home and support suitable to his condition in life, being a mining man or expert, a man above the ordinary laborer, although she was importuning him during that time to do so, and was ready and willing to return to him as soon as he was in a position to do so. He did not invite her to return to a home reasonably suitable to their station in life, and offer to support her. The domestic relation and marriage ties are not so binding on the wife as to require her to deny herself the common comforts and necessities of life in order to live with a shiftless husband who will not furnish her a reasonably comfortable home and the necessaries of life. He did not inform her that he had any employment whereby he could earn sufficient to support her and his son, and when interrogated as to this matter while on the witness stand, he was not permitted to answer. One of the important facts to have been shown by him on the trial, tending to show good faith, was that he urged his wife to return from California to a home reasonably suitable to their condition in life, and that he was able to support her without her going out on the farm and doing a man's work, as she had theretofore done, or working in a candy store in Lewiston; whereas he failed to show any such thing, and it appears that he requested her to return from California, where she was earning $100 a month, to Lewiston to a lodging house, without any assurance that he had a job or employment whereby he could earn sufficient to support her. It is clear to us that the wife was justified in having no con-

fidence in her husband's willingness to furnish her a home and support, as he never gave her any assurance of his ability to do so, and had utterly failed to do so during the three years prior to the date of the commencement of this action. As against the sincerity of the request of respondent for appellant to return to him, there are the facts of his having never sent her any money with which to pay the expenses of the trip, and not furnishing any money for the support of herself and his son during their absence, and the record is entirely devoid of any evidence whatever showing his willingness and ability to furnish the appellant and their son a home and to support them; at least, until the sale of lots began, and then he sent her only one-half of the proceeds of such sales, and protested against doing that. The respondent cannot so conduct himself as to force his wife to seek employment whereby she may support herself,—he cannot do that, and if she leaves for that purpose, base an action for desertion on that fact, when his own act or conduct brought it about. It is clear from the evidence in this case that the absence of the wife was not wilful with an intention to desert, but her leaving her home was enforced by the husband himself. The defendant in this action has always expressed her desire for her husband to furnish her a home and to support her, and whenever he would do that, she would return and live with him. Under the authority herein cited, as applied to the evidence of this case, it is clear that her absence from her home was enforced and brought about by the illconduct of her husband.

Bishop further states: "A leaving of the cohabitation by one who does it as the natural return for the other's ill-conduct cannot be relied on by the other, who has made no proper effort to prevent it, as desertion." In sec. 1741 that author lays down the following rule:

"It is a general principle of the law that one is estopped from complaining of what he suffers as to the natural and probable consequence of his own act. We saw something of this under the title 'cruelty.' And within this doctrine, if a married party does what will naturally and probably—es-

pecially what will properly and necessarily—drive away the other, he cannot make the going the foundation for a dissolution of the marriage. 'To a husband seeking a divorce under such circumstances,' observed Dewey, J., 'it might well be said, your barbarity, your inhumanity, or your gross neglect (as the case might be) was the occasion of the separation of which you complain; your wife was only an involuntary actor in the scene, and you must be content to abide the consequences resulting from your own misconduct.' ''

See, also, *Pidge v. Pidge,* 3 Met. 257, 261; *Smith v. Smith,* 12 N. H. 80; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938.

It is contended that under the provisions of sec. 2471, Rev. Stat., a divorce cannot be granted upon the uncorroborated statement, admission or testimony of the parties, and that therefore the letters and admissions of the respondent will not alone sufficiently corroborate the testimony of the plaintiff as to the facts of desertion. That section is as follows: ''No divorce can be granted upon the default of the defendant or upon the uncorroborated statement, admission or testimony of the parties. . . . .'' The object and purpose of the provisions of that statute were to prevent collusive divorces and to guard against the dangers of conspiracy on the part of the plaintiff, and false and colored testimony concerning the admissions and confessions of the defendant. In *Baker v. Baker,* 13 Cal. 88, we find a very exhaustive opinion by Justice Field, under a statute which provided that no divorce should be granted ''on the admission or statement of either party.'' It was there held that the provisions of that section did not prohibit the introduction of confessions in evidence, but simply prevent the granting of a decree on them alone. The section of the statute there construed was different from the one under consideration in this: that it provided divorces should not be granted on the admission or statement of either party. Sec. 2471 provides that no divorce shall be granted upon the ''statement, admission or testimony of the parties.'' In the California statute there considered, there is no prohibition against one of the parties to the ac-

tion corroborating the other. But that section has since been changed and is now the same as our sec. 2471, and prohibits the granting of a divorce on the uncorroborated statement, admission or testimony of the "parties," whereas the earlier section prohibited the granting of a divorce on the uncorroborated admission or statement of "either party." The section as amended was considered by the California supreme court in *Kenniston v. Kenniston* (6 Cal. App. 657), 92 Pac. 1037, and *Hayes v. Hayes,* 144 Cal. 627, 78 Pac. 19, and in the latter case the court said: "But the confession of the wife, as well as the testimony of plaintiff, required corroboration and there was none."

In the California case of *Baker v. Baker, supra,* Justice Field said:

"The statute, as appears, does not in terms prohibit the introduction of confessions; but only provides that the decree shall not be granted on them. In this respect it is only affirmatory of the well-established rule of the common and of the English ecclesiastical law, which has been recognized from the earliest period, both in England and the several states of the Union. The object of the rule is to prevent collusion between the parties. Without some limitation of this kind, it would be in the power of the parties to obtain a divorce in all cases. The public is interested in the marriage relation and the maintenance of its integrity, as it is the foundation of the social system, and the law wisely requires proof of the facts alleged as the ground for its dissolution."

It is contended that corroborative evidence, consisting of the letters of the wife and her testimony, is sufficient. Corroborative evidence is certainly additional evidence of a different character to the same point. If the testimony of one of the parties was sufficiently corroborative of the testimony of the other, it will readily be seen that divorces could be had upon the testimony of the parties alone, one party being sufficient to corroborate the other. But that was not the intention of the law. It was to prevent collusion of the parties and require corroboration of the main fact, which in this case is desertion, by other evidence than that of the testimony or

letters or confessions of one of the parties. Without some limitation of this kind, it would be in the power of parties to obtain divorces in all cases by corroborating each other. The statute is mandatory and prohibits the granting of a divorce upon the uncorroborated "statement, admission or testimony of the parties." There must be some other and different corroboration of the main fact in issue than the "statement, admission or testimony of the parties."

In 2 Bishop on Marriage and Divorce, sec. 762, the author lays down the following rule as to the proof required by plaintiff:

"The party charging the matrimonial offense must present more than equally balanced testimony, and he must affirmatively and satisfactorily prove it; he must overcome the presumption of innocence, and otherwise make out his case clearly, in proportion to the gravity of the accusation and its heavy consequences."

It is contended that there is nothing contained in the evidence but the testimony of the parties in regard to desertion and that under that provision of the statute, one party to the action cannot corroborate the testimony of the other as to desertion, and if separation is by mutual consent, wilful desertion cannot be based on such separation.

In *Kenniston v. Kenniston* (6 Cal. App. 657), 92 Pac. 1037, the court had under consideration the question of corroborative evidence, and said:

"But sec. 130 of the Civil Code provides that 'no divorce can be granted upon . . . . the uncorroborated statement, admission or testimony of the parties.' The vital question here relates to the effect to be given to this provision of the statute. 'Corroborative evidence is additional evidence of a different character to the same point.' (Code Civ. Proc., sec. 1839.) It is difficult, of course, by a general rule to prescribe the extent of the corroborative evidence required to satisfy the statute. But if it is clear that there is no such evidence, the duty of the court to deny the divorce is plain if regard is to be paid to the legislative will. The public is greatly interested in the maintenance of the marital rela-

tion, and it should not be dissolved at the whim or caprice of the parties, nor without the complete sanction of the law. (*Kuhl v. Kuhl*, 124 Cal. 58, 56 Pac. 629.) As an illustration of the application of the rule, we find the supreme court holding in *Hayes v. Hayes*, 144 Cal. 627, 78 Pac. 19, that the testimony of the husband was not sufficiently corroborated by the testimony of another witness as to the confession of the wife; the court, through Commissioner Chipman, stating: 'But the confession of the wife, as well as the testimony of plaintiff, required corroboration, and there was none.' "

In *Baker v. Baker*, 13 Cal. 87, the court said:

"The object of the rule is to prevent collusion between the parties. Without some limitation of this kind, it would be in the power of the parties to obtain a divorce in all cases. The public is interested in the marriage relation and the maintenance of its integrity, as it is the foundation of the social system, and the law wisely requires proof of the facts alleged as the ground for its dissolution."

Great reliance is placed by counsel in the effect of defendant's letters as corroborating the testimony of the respondent as to the facts and circumstances of desertion. There is no doubt but what such letters are competent evidence to be introduced as tending to prove desertion, but they are written statements or admissions of one of the parties, and under the provisions of said sec. 2471 require some corroboration. The wife appeared and defended in this action, and maintains that she has not deserted the husband and gives some explanation of why she wrote some of those letters in which she made certain statements in regard to separation and that she had become a "man-hater." In *Vanzeke v. Vanzeke*, 94 Cal. 227, 29 Pac. 499, the court, in referring to the degree of corroboration required in such cases, said:

"The degree of corroboration required by sec. 130 of the Civil Code has never been defined, and it has been said that in the very nature of the case, it would be impossible to lay down a general rule as to the degree of corroboration which will be requisite; hence the statute only requires that there

shall be some corroborating evidence," meaning, as we suppose, that there must be some evidence corroborating the plaintiff aside from the testimony or confession or admissions of the defendant made in her letters to the plaintiff, or in her testimony during the trial.

The allegations and prayer of the complaint are significant in that the son is not referred to therein. The prayer is that the bonds of matrimony between respondent and appellant be dissolved, and that the appellant be decreed to hold said real estate in trust for the respondent and that she reconvey the same to respondent. This, to me, seems remarkable, inasmuch as it appears from the record that the appellant had been supporting the child all these years, and now respondent seeks to rid himself of both the appellant and his child, and to recover title to all of said real estate without making any provision for the support and maintenance of the son.

So far as the probative facts are concerned in regard to the issue of desertion, there is no substantial conflict in the evidence, and from a careful consideration of all of the evidence upon that issue, we are fully satisfied that the third finding of fact made by the trial court is not supported by the evidence. That finding is as follows: "That more than one year before the commencement of this action, the defendant wilfully and without cause, deserted and abandoned plaintiff, and ever since has continued to live separate and apart from him without sufficient cause and without any reason, against his will and without his consent."

This conclusion makes it unnecessary for us to pass upon the issues raised in regard to the real estate, as in actions for divorce the question of the ownership of real estate will not be determined unless the divorce is granted. It is therefore unnecessary for us to determine the issues of law raised in regard to the introduction or rejection of evidence on the issues as to the ownership of said real estate.

A number of assignments of error are based on the admission of certain letters from the appellant to the respondent. There was no error in admitting those letters. While there

might have been some technical errors in admitting or rejecting certain other evidence, we do not think it necessary for us to consider each of those specifications separately, for on a retrial of the case, if a retrial is had, those questions will not arise.

We therefore conclude that the judgment granting the divorce, as well as the judgment in regard to the real estate, must be set aside, and it is so ordered. Costs of this appeal are awarded to the appellant.

Ailshie, C. J., and Stewart, J., concur.