## MORRIS v. MORRIS.

EXTREME cruelty, in our Divorce Act, means the same thing as the *sævitia* or cruelty of the English Ecclesiastical Courts.

It may be defined, generally, to be any conduct, in one of the married parties, which furnishes reasonable apprehension that the continuance of the cohabitation would be attended with bodily harm to the other.

Courts grant divorces, in such cases, not to punish an offense already committed, but to relieve the complaining party of apprehended danger. And the divorce may follow, even in the absence of any actual violence.

But if there has been actual violence, it must be attended with danger to life, limb or health, or be such as to cause reasonable apprehension of future danger.

APPEAL from the Twelfth District.

Action of divorce by the wife against the husband for *extreme cruelty*. The case was sent to a referee to find facts and report a judgment. The referee reported in favor of plaintiff. The court below refused to enter judgment in accordance with the report, and gave judgment for defendant. Plaintiff appeals.

*Gregory Yale*, for Appellant, argued : that the evidence showed not only an act of actual violence endangering life, but systematic conduct, on the part of the husband, tending to the same result. And, further, that a single act of violence may, under such circumstances, be sufficient to authorize a divorce. Courts interfere where no violence at all or other physical injury, has been in-

flicted, because divorce for cruelty is allowed, rather to prevent an apprehended danger, than to punish for what has already been done. (Bishop, Sec. 480.)

*Shattuck, Spencer & Reichert,* for Respondent.

I. The record does not present a case of extreme cruelty.

Cruelty, justifying a divorce, is defined to be such conduct as causes a reasonable apprehension of bodily harm by the continuance of cohabitation, dangerous to life, limb, or health. (Bishop's Marriage and Divorce, Sec. 454; Id. N. 1, p. 454, and authorities; Id. N. 3, p. 459; also Secs. 464, 465, 468, 469, 475, 481, 485; *Finley* v. *Finley*, 9 Dana, 52.)

It will be seen that in a married life of many years, but one act of cruelty is complained of—and this arising suddenly, from a mutual quarrel. This is not what the books mean by extreme cruelty.

Is there any danger to her life, limb, or health, by the cohabitation? Is there reasonable apprehension of danger, so as to put her in fear? No cruelty is proven upon him; none is alleged against him except this solitary case. We admit, that repeated acts of cruelty are not necessary to sustain the charge; that threats of violence may do it without blows; that a deliberate and continued assult upon character may do it without personal violence, upon the principle that woman prizes virtue dearer than life itself, and he who attempts deliberately to rob her of her good name, saps the foundation of her happiness and inflicts a deeper wound than the ruffian does by his repeated blows. But the defendant is not charged with either of these species of cruelty. He has not traduced his wife; he has not threatened her with bodily harm. He is only charged with one departure from the rules of propriety, and that in a moment of high excitement and great provocation caused by his accuser.

Lord Stowell says: " The definition of legal cruelty is that which may endanger the life or health of the party." (*Warring* v. *Warring*, 2 Phillim, 132; Bishop, 454, N. 1; *Evans* v. *Evans*, 1 Hugg, C. R. 35; *Barrere* v. *Barrere*, 4 J. Ch. 187; *Finley* v. *Finley*, 9 Dana, 52.)

II. The act of cruelty complained of was provoked by the acts of the plaintiff, and she cannot therefore legally complain.

(*Poor* v. *Poor*, 8 N. H. 307 ; *Durand* v. *Her Husband*, 4 Martin, 174 ; Bishop's Marriage and Divorce, 491, and N. 4 ; Id. 494.)

III.  The attempt at reconciliation made by the defendant, if not accepted for a sufficient time to amount to a condonation, showed a disposition on his part to atone for the wrong, and should be considered in his favor.  (Bishop, 456, N. 5 and 6 ; also see 500.)

As to the general doctrine of condonation, the Court is referred to *Gardner* v. *Gardner*, 2 Gray, (Mass.) 434 ; *Burr* v. *Burr*, 10 Paige, 20 ; *Wheispel* v. *Wheispel*, 4 Barb. 217 ; *Smith* v. *Smith*, 4 Id. 432 ; *Johnson* v. *Johnson*, 14 Wend. 637.

COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

This is an action for divorce, on the ground of *extreme cruelty*. It appears that the parties were married in Philadelphia, on the 28th of December, 1849, and came to this State in the month of November, 1852, where they resided and cohabited as husband and wife until their separation, in Jan. 1857.  There is some evidence showing that the marriage was never productive of much happiness to either of the parties.  The plaintiff, if her own declarations are to be relied on, was an unwilling party to its consummation, and sacrificed her own feelings to the authority of her mother.  It could hardly have been expected that much happiness would result from a marriage thus contracted.  The testimony relative to the conduct of the defendant towards the plaintiff, prior to the occurrences which led to their separation, is conflicting and unsatisfactory.  It is not alleged that any act of personal violence was ever committed or attempted ; and it does not appear that the plaintiff at any time expressed or entertained apprehension of personal danger.  The most that can be claimed as the result of the evidence on this point is, that the defendant, in his intercourse with the plaintiff, did not exhibit that regard for her which was due from him as her husband, and which their relative situations should have inspired.

In our opinion, the case of the plaintiff must stand or fall upon the fact of the violence to her person, committed on the day preceding the separation, and its immediate attendant circumstances, and can derive no support from the previous or subse-

quent conduct of the defendant. The allegation of the complaint that the plaintiff was forced from her home by the defendant and compelled to seek a refuge elsewhere, is not sustained by the evidence. At the moment of leaving, she declared to a female acquaintance that she would even then forego her purpose and remain, if he would express any sorrow or regret for what he had done. Why this declaration, if she was compelled to go? Does it not show conclusively that her going was a voluntary act, and not the result of any force or coercion whatever? A few days after, she returned, with the consent of her husband, to the very home from which she alleges she was driven. The circumstances, taken together, are irreconcilable with any other conclusion than that her act in leaving was entirely voluntary, induced, no doubt, by the violence of the preceding day, but without any immediate force or coercion, or any apprehension of future danger.

This brings us to the question whether the violence committed upon the person of the plaintiff, on the day preceding the separation, and the immediate attendant circumstances of such violence, constitute the offense of *extreme cruelty*, within the meaning of our statute? For the purpose of solving this question, we will admit the allegations of the complaint to be true. The specific charge is, that the defendant laid violent hands on the plaintiff, seized her by the throat, and choked and maltreated her in such a manner as to leave on her person visible marks of his cruelty. It is not alleged in the complaint, nor does it appear in the evidence, that the violence committed was such as to endanger life, limb, or health, or to cause a reasonable apprehension of such danger. We construe the expression, *extreme cruelty*, as used in our statute, to mean the same thing as the *sævitia* or cruelty of the English Ecclesiastical Courts, and the offense may be defined, in general terms, to be any conduct, in one of the married parties, which furnishes reasonable apprehension that the continuance of the cohabitation would be attended with bodily harm to the other. Courts do not interfere in these cases so much to punish an offense already committed, as to relieve the complaining party from an apprehended danger. (Bishop on Marriage and Divorce, Sec. 456.) The effect of an act of alleged cruelty, is the criterion by which it must be tested. If the act

is such as to create a reasonable apprehension that a continuance of the cohabitation would be attended with bodily harm, it will justify a divorce, even in the absence of any proof of actual violence. But when, as in the present case, actual violence has been committed, the authorities agree, that such violence, to authorize a divorce, must be attended with danger to life, limb, or health, or be such as to cause reasonable apprehension of future danger.

Lord Stowell, in the case of *Evans* v. *Evans*, (1 Hugg. C. R. 35,) in speaking of what constitutes *legal cruelty*, says : "In the present case it is hardly necessary for me to define it, because the facts here complained of are such as to fall within the strictest definition of cruelty; they affect not only the comfort, but they affect the health, and even the life, of the party. I shall, therefore, decline the task of laying down a direct definition. This, however, must be understood, that it is the duty of Courts, and consequently the inclination of Courts, to keep the rule extremely strict. The causes must be grave and weighty, and such as show an absolute impossibility that the duties of married life can be discharged." In the case of *Barrere* v. *Barrere*, (4 Johns. Ch. 187,) Chancellor Kent uses the following language : "Though a personal assault and battery, or a just apprehension of bodily hurt, may be ground for this species of divorce, yet it must be obvious to every man of reflection, that much caution and discrimination ought to be used on this subject. The slightest assault or touch, in anger, would not, surely, in ordinary cases, justify such a grave and momentous decision." He refers, with approbation, to the languge of Pothier, that a blow or stroke of the hand would not be a cause of separation under all circumstances, unless it was often repeated. The Judge ought to consider if it was for no cause, or for a trivial one, that the husband was led to this excess, or if it was the result of provoking language on the part of the wife, pushing his patience to extremity. He ought, also, to consider whether the violence was a solitary instance, and the parties had previously lived in harmony. *Finley* v. *Finley*, (9 Dana, 52,) presents several points of similarity to the case at bar. It was a suit for alimony, upon the charge of " cruel, inhuman, and barbarous, treatment." It was shown that the previous intercourse of the parties had not been of a

very agreeable character, that a single act of personal violence had been committed by the husband, and that a separation immediately ensued. The Chancellor decreed an allowance to the wife, but on appeal, the decree was reversed, and the bill dismissed. Judge Ewing, in delivering the opinion of the Court, said: "Upon the whole, we can regard the affair in no other light than as a sudden freak of passion, on both sides, in which no serious injury was done, and which should have been passed by and forgotten with the moment, and furnished no sufficient ground to justify a dissolution of the sacred connection of man and wife."

A further citation of authorities would be useless labor. It is clear that the plaintiff failed to establish her right to the relief prayed for in the complaint. Even if her own conduct furnished no excuse or apology for the violence used, still, as the first and only act in a married experience of more than eight years, resulting in no serious injury, and creating, as we think, no reasonable apprehension of future danger, such violence certainly affords no rational cause for a divorce.

In addition to all this, it is our opinion that the conduct of the plaintiff was not free from blame. Our conclusion, from the evidence, is, that the cause of complaint originated in a mutual quarrel, in which violence was resorted to by both parties. Which of them committed the first act does not appear, but the circumstances satisfy us that the conduct of the defendant was induced by some provocation, received at the hands of the plaintiff, and while under the influence of strong and ungovernable passion, caused by such provocation.

Judgment affirmed.