## DUNN v. DUNN.

1. DIVORCE—GROUNDS—CRUELTY — COMPELLING ABORTION— EVI-
DENCE—SUFFICIENCY.
   On a bill for divorce on the ground of extreme cruelty in com-
   pelling complainant to submit to successive abortions, evi-
   dence examined, and *held*, sufficient to establish the charge
   set forth in the bill. GRANT, BLAIR, and OSTRANDER, JJ.,
   dissenting.

2. SAME.
   For a husband to insist upon his wife submitting to successive
   abortions, resulting in her leaving home rather than submit,
   is extreme cruelty entitling the wife to a divorce.

3. SAME—DEFENSES—REMOVAL OF CAUSE—PROMISES—EFFECT.
   A promise by the husband to waive his objections to her bear-
   ing children if she would resume her wifely relations comes
   too late after she has for a long time submitted to his wrong-
   ful conduct and she has left him a second time in consequence
   of his breach of a similar promise. GRANT, BLAIR, and
   OSTRANDER, JJ., dissenting.

Appeal from Ingham; Wiest, J. Submitted June 14,
1907. (Docket No. 97.) Decided December 30, 1907.

Bill by Julia Dunn against Samuel Albert Dunn for a
divorce. From a decree dismissing the bill, complainant
appeals. Reversed, and decree entered for complainant.

*Jason E. Nichols*, for complainant.

*Thomas, Cummins & Nichols* (*Lawton T. Hemans*,
of counsel), for defendant.

CARPENTER, J. Complainant, the wife of defendant,
seeks a divorce. She charges that defendant insisted,
as a condition of the continuance of the marital relations,
that she should bear no children, and that in consequence
of this insistence she submitted to two abortions, and fin-.

ally left her home rather than submit to a third. The trial judge—presumably because he did not believe the charge established—decided the case in defendant's favor and dismissed complainant's bill. We are compelled to differ with him. In our judgment the testimony establishes the charge substantially as above set forth. We have given some of the reasons for the foregoing conclusion in a memorandum opinion—not intended for publication—filed herewith. It is unnecessary to cite authorities in support of the proposition that defendant's conduct constitutes such extreme cruelty as to entitle complainant to a divorce. His conduct was in violation of the laws of God and of man. It tended to defeat the object of the marital relations.

It is urged that the divorce should not be granted because, after complainant had left him, defendant promised to waive his objections to her bearing children if she would resume her wifely relations. This promise came too late. It came after complainant had for a long time submitted to defendant's wrongful conduct and after a similar promise had been broken. Under these circumstances she had a right to decline to again give him her trust and confidence. Complainant is entitled to a decree. She is also entitled to an allowance for alimony and expenses of suit. This record does not contain all that is necessary to enable the court to make such an allowance. It may, therefore, be made a subject of a future application if the parties themselves cannot—and it is to be hoped they can—arrange it by mutual agreement.

McALVAY, C. J., and MONTGOMERY, HOOKER, and MOORE, JJ., concurred with CARPENTER, J.

GRANT, J. I think the decree should be sustained. The judge evidently placed no confidence in the truthfulness of complainant. Neither can I. Her right to divorce depends almost exclusively upon her own evidence. I think this is clearly a case where the trial judge was in better position to determine the credibility of the wit-

nesses than are we. She charged a physician and her husband with a heinous crime. Both deny it. I think the evidence conclusively establishes the fact that she married the defendant under an agreement to avoid bearing children on account of his having once been insane and confined in an asylum. Such a woman is entitled to little consideration in a court of equity. I have stated my views of the testimony in a memorandum opinion, as has my Brother CARPENTER. It is unnecessary to publish the disgusting details disclosed by the record.

I think the decree should be sustained for another reason. It is not the policy of the law to grant divorces where there is a fair prospect that the conjugal trouble can and will be removed, and where the offending party acknowledges his error, repents, and promises that there shall be no repetition of the trouble. Defendant repeatedly promised, both by his letters and his conversations with others, that there should be no occasion for complaint in the future, and that if she desired she might have children. This would remove the only obstacle to their conjugal happiness. I think there is no reasonable apprehension that he will continue those acts which she characterizes as cruelty. A proper regard, therefore, for the stability of the marriage relation should require its continuance and a further attempt on her part to test his sincerity. *English* v. *English,* 27 N. J. Eq. 579. In that case the wife testified that the husband struck her with his fist under very aggravating circumstances. She also testified to other acts of cruelty. There as here the testimony of the husband and wife was in direct conflict. The defendant in that case, after his wife had left, wrote letters promising that "every trouble so far as it depended upon him should be removed." The court was satisfied that the wife would not be unsafe in his hands and dismissed her bill. The principle, which, in my judgment, should control in these cases, is there so well stated that I quote it:

" The point for determination is not whether the husband, in his rudeness, has injured his wife without suf-

ficient thought or care of her physical health, while doing an act which, in ordinary cases, is not unlawful, injurious or dangerous, for it must be conceded, under the facts of this case, that he has thus abused his marital rights; but the true inquiry is whether the conduct of the husband has been such as to raise a reasonable apprehension that further acts of the same abuse will be committed if the wife should return to him.   The court must be satisfied that the wife is in danger of bodily harm if she go back to him, or, to use the language in *Close* v. *Close*, 25 N. J. Eq. 529, that he has done and will continue to do such acts as will endanger her health, or render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife.   It is not the question whether she will live more comfortably at her father's house, with a liberal allowance for alimony, but whether she is released from her duty as a wife by the extreme cruelty of her husband, and the reasonable apprehension that it will continue.   The principle which must decide this case does not affect these parties alone; it is of the utmost importance to all, that these bonds should not be lightly severed."

" Courts do not interfere in these cases so much to punish an offense already committed, as to relieve the complaining party from an apprehended danger."   *Morris* v. *Morris*, 14 Cal. 76.

The maintenance of the sacred relation of marriage is so essential to the public welfare, to public morals, and the morals and the proper education of children, that courts should only dissolve it when cruelty is the basis for relief—upon clear proof of extreme cruelty and after the court is convinced that there is no reasonable ground to believe that the offending party has repented and will thereafter remove all cause of complaint.

I think complainant has no reasonable ground to apprehend the continuance of the trouble, or to doubt the sincerity of her husband's promise to remove this, the only obstacle, to their happiness.   I think it the clear duty of the court to refuse her a decree.

BLAIR and OSTRANDER, JJ., concurred with GRANT, J.