[No. 1833]

CHARLES F. KAPP, PETITIONER, *v.* THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT OF THE STATE OF NEVADA, ET AL., RESPONDENTS.

1. CERTIORARI—REVIEW—SCOPE.

　The inquiry on a writ of *certiorari* will not be extended further than to determine whether the inferior tribunal has jurisdiction to make the orders complained of; and, if the record discloses that it has complete jurisdiction, any error in an order will not be considered.

2. DIVORCE—CRUEL AND INHUMAN TREATMENT—COMPLAINT—SUFFICIENCY.

　A complaint, in an action by wife for divorce, alleging that defendant inhumanly caught plaintiff by the throat in an angry and threatening manner, and forced her out of the house; threatened her and commanded that she leave; called her vile and opprobrious names, thereby causing her to become weak and nervous, fearfully suffering bodily injury at defendant's hands—sufficiently alleged extreme cruelty.

3. DIVORCE—ALIMONY PENDENTE LITE—MODIFICATION OF ORDER.

　Under Comp. Laws, 507, providing that in any suit for divorce the court may, at any time after the filing of the complaint, require the husband to pay such sums as may be necessary to enable the wife to carry on or defend such suit, and for her support, etc., pending such suit, the court may, where it has jurisdiction, during a divorce action, increase or diminish the allowance from time to time as the circumstances may require.

4. DIVORCE—ALIMONY—REVIEW—CERTIORARI.

　Where the court has jurisdiction of divorce action, and has discretion to make such an allowance to the wife as the circumstances warrant *pendente lite*, the supreme court will not annul such an order by writ of *certiorari*.

ORIGINAL PROCEEDING. Application for a writ of *certiorari* by Charles F. Kapp against the District Court of the Seventh Judicial District of the State of Nevada, and others. **Dismissed.**

The facts sufficiently appear in the opinion.

*Detch & Carney*, for Petitioner.

*Thompson, Morehouse & Thompson*, for Respondents.

By the Court, SWEENEY, J.:

This is an original proceeding in *certiorari*, brought to review certain orders made in the respondents' court by the respondent judge in a divorce suit therein pending, modify-

ing and increasing the amount of alimony granted respondent *pendente lite* from $100 to $200 per month, and adjudging petitioner guilty of contempt of court for failure to comply with the order of the court increasing said alimony.

The complainant, Margaret G. Kapp, commenced an action on the 28th day of August, 1908, in the above-entitled district court against the petitioner herein, Charles F. Kapp, upon the ground of extreme cruelty. Upon the filing of said complaint said court issued an injunction restraining the said petitioner from interfering with the said Margaret G. Kapp, and enjoining him from transferring or disposing of any of his property pending the termination of the suit. Thereafter the plaintiff applied to the district court for alimony *pendente lite*, and the parties to the suit through their respective counsel entered into a stipulation respecting the alimony to be allowed *pendente lite*, granting respondent alimony of $100 per month, and certain court costs and counsel fees, which the court ordered in conformity with said stipulation, which was filed. Subsequently, on the 27th day of November, 1908, the respondent Margaret G. Kapp moved the court, upon due and regular notice and motion, to set aside the former order for $100 alimony, and grant plaintiff $400 per month *pendente lite* for several reasons assigned. This motion was contested upon affidavits and heard by the court, and the court, after hearing the application, increased the alimony from $100 to $200 per month. The defendant refused, failed, and neglected to comply with this last order commanding him to pay alimony, whereupon an affidavit was filed, and an order made citing defendant to show cause why he should not be punished for contempt. In compliance with the order to show cause he duly appeared and filed an affidavit, setting forth, in effect, that there was nothing in the change of situation of the respective parties to warrant the increase of the alimony averred, and that the court was without power, authority, or jurisdiction to enter such an order, and that for these reasons he could not be adjudged guilty of contempt, and moved to set aside and vacate the order fixing the alimony at $200 per month. After a hearing of the citation his motion was denied, and he was adjudged guilty of contempt for not obey-

ing the order of the court, and sentenced, upon failure to comply with the order by 10 o'clock of the 12th day of April, 1909, to be committed to the county jail of the said Esmeralda County until the said order was complied with.

· This court has repeatedly and uniformly held that the inquiry upon the writ of *certiorari* will not be extended further than to determine whether the inferior tribunal has jurisdiction to make the orders complained of, and that if the record discloses it has complete jurisdiction, any error in the order of the court will not be considered. (*Maynard* v. *Railey*, 2 Nev. 313; *State* v. *County Commissioners of Washoe County*, 5 Nev. 317; *State ex rel. Fall* v. *County Commissioners of Humboldt County*, 6 Nev. 100; *State ex rel. Mason* v. *County Commissioners of Ormsby County*, 7 Nev. 392; *Hetzel* v. *County Commissioners of Eureka County*, 8 Nev. 359; *Maxwell* v. *Rives*, 11 Nev. 213; *In Re Wixom*, 12 Nev. 219; *State* v. *District Court*, 16 Nev. 76; *State* v. *District Court*, 26 Nev. 253; *Florence-Goldfield M. Co.* v. *First Judicial District Court*, 30 Nev. 391; 4 Ency. Pl. & Pr. 127.)

It is contended by petitioner that the facts set forth in plaintiff's complaint do not constitute a cause of action, in that the allegations in said complaint of cruel and inhuman treatment do not show any acts of physical violence, or any acts showing any threatening of injury, or facts sufficient to warrant the court in finding that the mental suffering arising therefrom sufficiently endangers the plaintiff's health, physically or mentally, to constitute extreme cruelty. Paragraph 3 of plaintiff's complaint alleges: "That shortly after their said marriage, defendant commenced toward plaintiff a course of cruel and inhuman conduct, of such character as, plaintiff alleges, constitutes extreme cruelty in this, to wit: That on divers occasions, without any fault, at their own residence here, in Goldfield, said defendant cruelly, wantonly, and inhumanly caught plaintiff by the throat, in an angry and threatening manner, and forced her out of the house, and threatened her, and directed and commanded that she leave and depart from their residence, and from her own home, and on divers and sundry occasions, the days and date whereof plaintiff cannot state with particularity, the said defendant spoke, of

and concerning plaintiff, without cause therefor, vile and
opprobrious names, with the intent and purpose to wound,
annoy, fret, worry, and disturb the said plaintiff.    That
plaintiff is a weak and nervous woman, of education and
refinement, and having, prior to her said marriage with the
defendant, been brought up in good society, with good social,
refined, and educated surroundings, and has all her life lived
a virtuous and upright life, conducting herself in a ladylike
and respectable manner, and has always sought to perform
her part of her marital obligation to and with the defendant,
but said defendant, without cause therefor, has so conducted
himself toward the plaintiff, by reason of assaulting her phys-
ically and wounding and injuring her physically, and by call-
ing her vile and opprobrious epithets, that plaintiff has become
weak and nervous, and is in that weak and nervous condition
that it is impossible for her to live with said defendant with-
out serious injury to her health, and that by reason of the
facts aforesaid said plaintiff has been compelled to and has
lived separate and apart from said defendant in the same
dwelling; that she is afraid of her life by reason of the con-
duct of the said defendant, and fearful of suffering great bod-
ily injury at his hands—wherefore said plaintiff avers that
said defendant has been and is guilty of extreme cruelty
toward the plaintiff."

We believe this allegation sufficient, if properly proven, to
constitute extreme cruelty under the laws of this state.

This court, in the case of *Kelly* v. *Kelly*, 18 Nev. 55, 51 Am.
Rep. 732, in passing upon the question of extreme cruelty,
said: "In considering extreme cruelty as a ground of divorce
courts have cautiously given it negative, rather than affirma-
tive, definitions.    The difficulty in giving an affirmative defini-
tion arises from the fact that cruelty is a relative term; its
existence frequently depends upon the character and refine-
ment of the parties, and the conclusion to be reached in each
case must depend upon its own particular facts.    'We do not
divorce savages and barbarians because they are such to each
other,' said the Supreme Court of Pennsylvania, in *Richards* v.
*Richards*.    'We can exercise no sound judgment in such cases
[divorce cases] without studying the acts complained of in

connection with the character of the parties, and for this we want the common sense of the jury rather than fixed legal rules.' (37 Pa. 228.)

"In the great case of *Evans* v. *Evans*, 1 Hagg. Cons. 35, Lord Stowell laid down certain principles which have been universally approved. He said: 'What is cruelty? In the present case it is hardly necessary for me to define it, because the facts here complained of are such as fall within the most restricted definition of cruelty; they affect not only the comfort, but they affect the health and even the life of the party. * * * What merely wounds the mental feelings is in few cases to be admitted, when not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manner, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty; they are high moral offenses in the marriage state undoubtedly, not innocent surely in any state of life, but still they are not that cruelty against which the law can relieve. * * * In the older cases of this sort which I have had an opportunity of looking into, I have observed that the danger of life, limb, or health is usually inserted as the ground upon which the court has proceeded to a separation. This doctrine has been repeatedly applied by the court in the cases that have been cited. The court has never been driven off this ground. It has been always jealous of the inconvenience of departing from it, and I have heard no case cited in which the court has granted a divorce without proof given of a reasonable apprehension of bodily hurt. I say an apprehension, because assuredly the court is not to wait until the hurt is actually done; but the apprehension must be reasonable. It must not be an apprehension arising merely from an exquisite and diseased sensibility of the mind.'

"Adopting the principle that the element of danger to life, limb, or health, or the reasonable apprehension of such danger, must exist in order to constitute legal cruelty, can it be affirmed as matter of law that the plaintiff may not have established a cause of action under the complaint? If the conduct of which the defendant confesses to have been guilty,

and which she admits drove the plaintiff from his home, could have resulted in injury to health, then the judgment must be allowed to stand. The result which the law is intended to prevent may be accomplished without any physical violence. The health of a sensitive wife may be as effectually destroyed by systematic abuse, and humiliating insults and annoyances, as by blows and batteries. It would be a reproach to the law, as is said by Mr. Bishop in his work on Marriage and Divorce, to say that a husband may not by personal violence ruin the health of his wife or kill her, and yet allow him to produce the same result in some other way. (Section 733.)

"Upon this subject the Pennsylvania court of common pleas employed the following language: 'A husband may, by a course of humiliating insults and annoyances, practiced in the various forms which ingenious malice could readily devise, eventually destroy the life or health of his wife, although such conduct may be unaccompanied by violence, positive or threatened. Would the wife have no remedy in such circumstances under our divorce laws, because actual or threatened personal violence formed no element in such cruelty? The answer to this question seems free from difficulty when the subject is considered with reference to the principles on which the divorce for cruelty is predicated. The courts intervene to dissolve the marriage bond under this head for the conservation of the life or health of the wife, endangered by the treatment of the husband. The cruelty is judged from its effects, not solely from the means by which those effects are produced. To hold absolutely that, if a husband avoids positive or threatened personal violence, the wife has no legal protection against any means short of these which he may resort to, and which may destroy her life or health, is to invite such a system of infliction by the indemnity given to the wrongdoer. The more rational application of the doctrine of cruelty is to consider a course of marital unkindness with reference to the effect it must necessarily produce on the life or health of the wife, and, if it has been such as to affect or injure either, to regard it as true legal cruelty. This doctrine seems to have been the view of Sir H.

Jenner Fust, in *Dysart* v. *Dysart*, where he deduces from what Sir William Scott ruled in *Evans* v. *Evans*, that if austerity of temper, petulance of manner, rudeness of language, a want of civil attention, occasional sallies of passion, do threaten bodily harm, they do amount to legal cruelty. This idea, expressed axiomatically, would be no less than the assertion of this principle: That, whatever form marital ill-treatment assumes, if a continuity of it involves the life or health of the wife, it is legal cruelty.' (*Butler* v. *Butler*, 1 Par. Eq. Cas. Pa. 344.)

"We scarcely need the aid of judicial authority for the enforcement of the truth that there may be cruelty without personal violence, and that such cruelty, working upon the mind, may affect the health. Wretchedness of mind can hardly fail to have this result. In cases of divorce upon the ground of cruelty, wives appear as complainants more frequently than husbands. This arises from the fact that the husband is generally physically stronger than the wife, and less susceptible to the effects of ill-treatment than she. He, too, may in fact frequently restrain the wife's violence by the exercise of marital power in the domestic forum, without the aid of courts. But the law does not encourage him to measure strength with her. 'The fact that the husband can defend himself is the very grievance. It is because he may be tempted, in defending himself, to retaliate upon his wife that the court is bound to interfere, and to decree a judicial separation when such acts are proved. When a man marries an ill-tempered woman he must put up with her ill humor; but the moment she lifts her hand against him, the court must interfere, for, if it does not, how can it answer the husband if he should subsequently allege that he had been forced to use violence in self-defense.' (*Forth* v. *Forth*, 36 Law J. 122, cited in Browning on M. and D. 111.)

"The statute contemplates cases in which the husband may be the complaining party, and in such cases expressly affords him the same relief which it extends to a complaining wife. Although he is generally physically stronger than she, he may be the weaker party. And cases may arise in which the wife may cause the husband to suffer as seriously, mentally and physically, as she would were he the aggressor. To

reverse this judgment would be to say, as matter of law, that no such cases could exist.   *   *   *"

In the case of *Reed* v. *Reed*, 4 Nev. 397, the following was said and quoted with approval by this court: "The application for the divorce being founded upon the statutory ground of extreme cruelty, it becomes necessary to determine what acts or character of treatment will in the eye of the law amount to such cruelty.   This is a question which has often received the consideration of courts, but as it is a matter which must in a great measure be determined by the character of the respective parties, and the peculiar circumstances of each case, no general rule sufficiently comprehensive to embrace all cases can well be established.   In the case of *Morris* v. *Morris*, 14 Cal. 76, 73 Am. Dec. 615, this language is employed by the court: 'We construe the expression "extreme cruelty," as used in our statute, to mean the same thing as the *sævitia*, or cruelty of the English ecclesiastical courts, and the offense may be defined in general terms to be any conduct in one of the married parties which furnishes. reasonable apprehension that the continuance of the cohabitation would be attended with bodily harm to the other.   Courts do not interfere in these cases so much to punish the offense already committed as to relieve the complaining party from an apprehended danger.'

"This is the general language of the books, and it will be observed that physical injury alone seems to merit consideration, whilst the subtle torture of mental anguish, unless occasioned by personal violence done or apprehended, is entirely overlooked.   There may be extreme cruelty without the slightest violence—the happiness of a life may be destroyed by a course of conduct which could furnish no ground for apprehending bodily harm or injury.   The rule as enunciated in *Morris* v. *Morris* furnishes no redress for that more refined brutality which inflicts its violence upon the mind.   In our judgment it is the effect and probable consequence of the misconduct complained of which should control the action of the courts more than anything else.   Hence, if it appear probable that the life of one of the parties is rendered miserable by any character of misconduct on the part of the other,

although no personal violence be apprehended, or if there be reason to apprehend bodily harm, if the marriage relation be continued, the separation should be decreed. It is evident that much must be left to the discretion of the court and jury in determining whether certain acts, or course of conduct, amount to extreme cruelty, for it is manifest from the nature of things that acts which would be extreme cruelty under some circumstances would not be so under others; and so, too, a course of conduct toward one person might be deemed extreme cruelty which towards another would not be so considered by any one.

"But in case of an act of violence, where there is no apprehension of its repetition—when it is the result of rashness rather than malignity—or when the misconduct complained of is temporary, and not likely to occasion continued suffering, the divorce should be denied, because this relief is not granted to punish the party guilty of the misconduct, but to relieve the other party from future suffering or violence. The language of Pothier is very appropriate even under the statute of this state. He says, in substance, a blow or stroke of the hand would not be a cause of separation under all circumstances, unless it was often repeated. The judge, he says, ought to consider if it was for no cause, or for a trivial one, that the husband was led to this excess, or if it was the result of provoking language on the part of the wife, pushing his patience to extremity. He ought also to consider whether the violence was a solitary instance, and the parties had previously lived in harmony. (*Traite du Contrat de Mariage*, 509.)

"Nor is a divorce ever granted where it appears that the party complaining wilfully provoked the violence or misconduct complained of, unless such violence be extremely out of proportion to the provocation. (*Poor* v. *Poor*, 8 N. H. 308, 29 Am. Dec. 664; *Morris* v. *Morris*, 14 Cal. 76, 73 Am. Dec. 631.) Such is certainly a just and proper rule, for it would be revolting to every sense of right to award a divorce to a person founded upon the consequences of his or her own misconduct. * * *"

In the present case, however, the allegation above quoted alleges actual violence, "by catching her by the throat," and

"commanding her to leave her home," which allegation, together with the other assertions of misconduct therein alleged, which could and should be more specifically pleaded in order to aid the trial court in determining the amount of proof sufficient in making a finding of extreme cruelty, yet as a whole sufficiently alleges extreme cruelty, and, together with the other allegations of the complaint and the appearance regularly entered by the defendant, the lower court acquired jurisdiction over the person and subject-matter in this action. (*Reinhard* v. *Reinhard*, 96 Wis. 555, 71 N. W. 803, 65 Am. St. Rep. 66; *Caruthers* v. *Caruthers*, 13 Iowa, 266; *Smedley* v. *Smedley*, 30 Ala. 714; *Morris* v. *Morris*, 14 Cal. 76, 73 Am. Dec. 631; *Sylvis* v. *Sylvis*, 11 Colo. 319, 17 Pac. 912; *Barnes* v. *Barnes*, 95 Cal. 171, 30 Pac. 298, 16 L. R. A. 660; *Fleming* v. *Fleming*, 95 Cal. 430, 30 Pac. 566, 29 Am. St. Rep. 124; 14 Cyc. 603–609.)

Counsel for petitioner assert that the court had no jurisdiction to make an order increasing the alimony from $100 to $200 per month. Section 507 of our Compiled Laws, which treats of the authority of a judge to grant alimony pending a suit, among other things, states: "* * * In any suit for divorce now pending, or which may hereafter be commenced, the court or judge may, in its discretion, upon application, of which due notice shall have been given to the husband, or his attorney, at any time after the filing of the complaint, require the husband to pay such sums as may be necessary to enable the wife to carry on or defend such suit, and for her support and the support of the children of the parties during the pendency of such suit; and the court or judge may direct the application of specific property of the husband to such object, and may also direct the payment to the wife for such purpose of any sum, or sums, that may be due and owing to the husband from any quarter, and may enforce all orders made in this behalf, as is provided in section 24 of this act."

The law is well settled that a trial court, where it has jurisdiction, during the pendency of an action for divorce, can increase or diminish the allowance from time to time as the circumstances may require (1 Ency. Pl. & Pr. 430; 2 Bishop on Mar. Div. and Sep. sec. 958; *Blake* v. *Blake*, 75 Wis. 339,

43 N. W. 114; *Ex Parte Cottrell*, 59 Cal. 417; *Stevens* v. *Stevens*, 31 Colo. 188, 72 Pac. 1061); and this court, in the case of *Lake* v. *Lake*, 16 Nev. 363, has also held that alimony can be granted *pendente lite*, and the amount to be given is vested in the discretion of the trial court, and sustains the rule that the alimony can be ordered increased or diminished by citing with approval the case of *Forrest* v. *Forrest*, 5 Bosw. 672, a New York case, saying that, although "alimony *pendente lite* had once been fixed and allowed to the plaintiff, the amount may be altered and increased, upon its appearing that the necessities of the plaintiff require it, and the amount of defendant's property is such that the increased allowance is reasonable." (*Morrell* v. *Morrell*, 2 Barb. 480.) The reasonableness of this rule is illustrated by the present case.

Where the court is vested with jurisdiction, and has the discretion to make such an allowance as the circumstances warrant *pendente lite*, this court will not annul such an order by a writ of *certiorari*. (*State of Nevada* v. *District Court*, 26 Nev. 253; *State* v. *Second Judicial District Court*, 23 Nev. 243; *Ketchum* v. *Superior Court*, 65 Cal. 494, 4 Pac. 492; *People* v. *Walter*, 68 N. Y. 403; *People* v. *Board of Commissioners*, 97 N. Y. 37; *People* v. *Kelly*, 24 N. Y. 74; *Tiedt* v. *Carstensen*, 61 Iowa, 334, 16 N. W. 214; *State* v. *Busby*, 44 N. J. Law, 627; *Livingston* v. *Rector*, 45 N. J. Law, 230; *Grannis* v. *Superior Court*, 143 Cal. 630, 77 Pac. 647.)

The court unquestionably had the authority and jurisdiction to increase or decrease the amount of the allowance made to plaintiff during the pendency of this action, and whether or not the circumstances and conditions presented in the application for the increase warranted the court in making this increase, its action in that respect is not reviewable on *certiorari*. All orders of this character made during the pendency of a suit are always subject to change. (*Dent* v. *Superior Court*, 7 Cal. App. 683, 95 Pac. 672; *Voorman* v. *Superior Court*, 149 Cal. 266, 86 Pac. 694.)

It is contended by counsel for petitioner that the court had no authority to increase this alimony because it was stipulated between the parties that the allowance should be $100, but the record discloses that the court, upon the filing of the stip-

ulation, made the order granting plaintiff the allowance of $100 with the specific statement in said order that the amount should be as stipulated "until the further order of the court" (petition, page 20), thereby specifically reserving the power to modify it in the future if circumstances arose necessitating such a change. Therefore there is no merit in this contention of counsel. Further than this, the stipulation was based on certain contingencies, as shown by the affidavit of respondent; but, viewing the law as we do, it is unnecessary to further elaborate on this assignment of error. The court having jurisdiction of the person and subject-matter of the suit in controversy, and the authority to grant alimony *pendente lite* and increase or diminish the same, it naturally follows that it had the authority to enforce its lawful orders, and, the defendant having violated such an order, the court had authority and jurisdiction, after defendant was personally legally served with process and regularly appeared and had his day in court, to adjudge him guilty of contempt, and punish him therefor for violating its decree.

It appearing to us that the court had jurisdiction to make the several orders complained of, the writ is dismissed.

It is so ordered.