[Civ. No. 2441. Third Appellate District. May 2, 1922.]

## ESSIE B. CRUM, Respondent, v. SAMUEL D. CRUM, Appellant.

[1] DIVORCE — EXTREME CRUELTY—TESTIMONY OF PLAINTIFF — SUFFICIENCY OF CORROBORATION.—In this action by a wife for a divorce on the ground of extreme cruelty, the testimony of the plaintiff was sufficiently corroborated.

[2] ID.—SUCCESSIVE ACTS OF ILL TREATMENT—EVIDENCE—EXTENT OF CORROBORATION. — Where a divorce is sought on the ground of extreme cruelty, consisting of successive acts of ill treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff, but it is sufficient corroboration if a considerable number of important and material facts are testified to by other witnesses, or if there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff.

[3] ID.—WHAT CONSTITUTES.—Extreme cruelty as specified by the law as one of the grounds upon which the married relation may be dissolved embraces not only physical violence inflicted upon the complaining party by the other, but also any conduct in one of the married parties which may produce mental anguish or suffering in the other or which furnishes reasonable apprehension that the continuance of the cohabitation under such circumstances might be attended with bodily harm committed by one upon the other.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. C. C. Russell for Appellant.

Clark Clement for Respondent.

HART, J.—The plaintiff was granted an interlocutory decree of divorce from the defendant on the ground of extreme cruelty. The decree also awarded to plaintiff the custody of the minor child of the parties, Mabel Ruth Crum, age seven years, the only issue of the marriage of said parties, and one-half of the community property, consisting principally of real estate. The personal property, of which there was a small amount, and which also belonged to the community, was awarded to the defendant.

The defendant appeals from the judgment under the alternative method upon the sole ground that the testimony of plaintiff as to the acts of cruelty alleged to have been committed by the defendant upon her was not legally corroborated.

The parties intermarried in the state of Missouri, in the month of May, 1908, and removed to Kings County, this state, about two years later.

The complaint alleges that on numerous occasions from the year in which the parties were married until May 12, 1920, on which latter date they separated and ceased living together, the defendant "has treated plaintiff in an ex-

3. Extreme cruelty as grounds for divorce, notes, 65 Am. St. Rep. 69; Ann. Cas. 1918B, 480, 500; 18 L. R. A. (N. S.) 305; 34 L. R. A. (N. S.) 360.

tremely cruel and inhuman manner," following which aver-
ment is a specification of certain acts of cruelty on plain-
tiff by the defendant in the years 1910, 1911, 1915, 1916,
and 1919. It is alleged that on one of these occasions the
defendant, in the presence of others, called plaintiff a
"d——n fool," a "d——n b——ch," and cursed and
threatened to inflict bodily injury upon her by saying:
"God d——n you; I will bust your head," and threatened
to kick plaintiff out of the house; that at another time,
the defendant, becoming very angry at plaintiff, struck her
a violent blow "over the head with his gun-case," and that
on another occasion, specifically mentioned in the complaint,
the defendant, having been asked by plaintiff "a few
friendly questions," became sullen and morose and refused
to answer said questions; that thereupon plaintiff insisted
on answers, when defendant became very angry, "grabbed
her with both hands and jammed her up against some
shelves, saying that he was going to kill her"; that at this
time defendant, without cause, "twisted plaintiff's arm
painfully and cracked a bone in one of her fingers"; that
in April, 1919, "while plaintiff and defendant were living
near Lemoore, in said county, defendant, without cause,
grabbed hold of plaintiff forcibly with his hands and
jammed her against the wall a number of times, and said
that he was going to kill plaintiff"; that, during the four
years immediately preceding the date of their separation,
the defendant has practiced sexual abuse upon the plain-
tiff, by reason whereof she has become a nervous wreck.
The complaint then charges generally numerous other acts
of cruelty practiced upon plaintiff by defendant during the
four years the couple resided in Lemoore, it being stated
that, without cause, the defendant "constantly reviled
plaintiff and cursed her with the vilest language"; that
defendant "has constantly been sullen and morose, without
cause, around home; that he has constantly and habitually
refused to talk to plaintiff, and has never talked to her ex-
cept when compelled by necessity to do so." There are
some other charges of cruelty in the complaint of a more
or less specific nature, as to which no findings were made
and which, therefore, require no specific notice herein.

The complaint describes and specifies the value of the
several pieces of real estate which it alleges is the com-

munity property of the parties and asks for a division thereof between said parties. The defendant, by his answer, denies specifically each and every material allegation of the complaint, and, while not asking for a decree, alleges that the trouble between the parties has been due to the ungovernable temper of the plaintiff; that she would "fly into a rage and run all the hired men off the ranch and would not allow anyone to come on the ranch to work for defendant," and that she otherwise frequently so annoyed and harassed the defendant that he could not do the work on his farm which was required of him, etc.

The court found generally that, since the date of the marriage between the parties, "the defendant has treated plaintiff in an extremely cruel and inhuman manner," and also specifically found that the several acts of cruelty particularized in the complaint and which are therein alleged to have occurred in the years 1910, 1911, and 1915 were committed by the defendant as so alleged. It was further found that, during the period of four years immediately preceding the date of the separation of the parties, the defendant practiced sexual abuse upon plaintiff "with the result that her nervous system was impaired thereby."

Reading the testimony in this case without reference to the findings of the court, one could hardly dodge the conclusion that neither the plaintiff nor the defendant was, in the maintenance of their domestic relations, a paragon of amiability in disposition. The plaintiff herself admitted that, on one occasion, having been provoked by the insulting language with which the defendant addressed her, after she had asked him in a singularly civil way some very decent questions, emphasized her indignation thereat by hurling at him a china coffee-cup with such accuracy of aim that it landed on the side of his face with sufficient force to inflict thereon a slight wound. This circumstance, however, does not mean that there is not sufficient corroboration of the plaintiff's testimony as to the general cruel treatment of her by the defendant during much of their married life. Indeed, she claimed and testified (and her testimony supporting this claim was corroborated by her adopted daughter) that she never at any time, including the occasion on which she hurled the coffee-cup with such telling effect, betrayed ill temper in controversies with her

husband until she had become so overwrought through his gross and inhuman mistreatment of her that she was unable to control herself.

[1] That the testimony of the plaintiff is sufficiently corroborated will readily appear from an examination of the evidence. There is no need for a detailed recapitulation herein of the testimony for the purpose of confirming this declaration. It will suffice merely to refer in a general way thereto.

The plaintiff testified that the defendant, sometimes in the presence of persons not members of their immediate family, had, on frequent occasions, addressed to her opprobrious epithets and cursed her, such as "God d——n you;" "you d——n b——ch," and that he had threatened to break her head and had, at different times, violently struck her; that he was of a morose and sullen disposition and very seldom would answer her with civility, sometimes not at all, when she would ask him about the business of the farm. She testified that his manner of maintaining sexual relations with her, against objection by her, was such that it resulted in the production of serious female trouble and, consequently, in a corresponding impairment of her health.

The adopted daughter of the parties testified that she had, on two occasions, witnessed the infliction of physical violence upon the plaintiff by the defendant. One of these occasions, though, was when the plaintiff struck the defendant with the coffee-cup. As to this circumstance, the little girl said that, after the cup was thrown by the plaintiff, the defendant grabbed hold of her mother and "jammed her up against the wall," and repeatedly bumped her head against the wall. She testified that the immediate cause of this particular trouble between them was that, after her mother had asked defendant some questions "in a nice way" and he had refused to answer the same, except to say to the plaintiff, "God d——n you, keep your mouth shut," the latter became very angry and thereupon hurled the cup at defendant. The other occasion on which the witness saw the defendant use physical force on plaintiff was after the couple had retired for the night. The witness said that she heard a noise in the room occupied by the plaintiff and the defendant and heard her mother scream, and that she (witness) then ran into the room and saw her father

in the act of choking her mother while they were in bed. The witness undertook to interfere, when the defendant ordered her from the room. The little girl further testified that "every day or so," for a long period of time prior to the date of the separation of the parties, she had heard the defendant curse the plaintiff and call her offensive names and threaten to injure her. It is not necessary to repeat here the language which the young witness testified that she so often heard her father use toward her mother. It is sufficient to say that said language was about as vile and offensive as can well be imagined. The witness, in effect, testified that such abuses of the plaintiff by the defendant was a common occurrence.

The family physician testified that he had, in the year 1920, professionally attended the plaintiff and upon examination found that she was suffering from severe female trouble and a general impairment of her nervous system by reason thereof and that the "sexual abuse" which the plaintiff stated to him that defendant had habitually practiced upon her would produce the condition which he found in the plaintiff.

It should be added that the testimony tends to show that the plaintiff was a woman of education and refinement, that for a period in her life she had taught school and that she was to some extent accomplished along musical lines.

Thus the evidence has been sufficiently referred to to show that, except as to the charge that the defendant practiced sexual abuse upon the plaintiff, the latter's testimony was corroborated—that is, her testimony bearing upon the charge that the defendant otherwise cruelly treated her is corroborated. The corroboration, it may be conceded, is not of her testimony as to all the acts of cruelty charged in the complaint and to the commission of which by defendant the plaintiff testified, but the corroboration does go to the testimony of the plaintiff as to many acts and words of cruelty charged in the complaint either specifically or generally, and, since from the fact that the defendant at the trial vigorously resisted and on this appeal likewise opposes the granting of the decree to the plaintiff, it is obvious that there was and is no collusion between them to procure a divorce, the corroboration is

legally sufficient. The main purpose of section 130 of the Civil Code, providing that no divorce can be granted upon the uncorroborated statement, admission, or testimony of the parties, is, as is said in *Andrews* v. *Andrews*, 120 Cal. 184 [52 Pac. 298], to prevent collusion. It is further said in that case, quoting from the syllabus:

[2] "Where a divorce is sought on the ground of extreme cruelty, consisting of successive acts of ill treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff, but it is sufficient corroboration if a considerable number of important and material facts are testified to by other witnesses, or if there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff."

As suggested, there can be no doubt that the testimony of the adopted daughter of the parties, if believed by the trial court, as manifestly it was, strongly tended to "strengthen and confirm the statements of the plaintiff" as to many of the acts and words of cruelty practiced by the defendant upon her. The trial court was justified in finding from the testimony of the plaintiff, as corroborated by the testimony of the adopted daughter, that the defendant had carried on a systematic abuse of the plaintiff, at least by words if not by acts, and was further justified in finding that the cruelty thus inflicted upon the plaintiff was, when considered in view of the fact that she was a woman of education, some culture and a corresponding degree of refinement, legally sufficient to warrant the decree. [3] It has often been held that extreme cruelty, as specified by the law as one of the grounds upon which the married relation may be dissolved, embraces not only physical violence inflicted upon the complaining party by the other, but also any conduct in one of the married parties which may produce mental anguish or suffering in the other or which furnishes reasonable apprehension that the continuance of the cohabitation under such circumstances might be attended with bodily harm committed by one upon the other. (See *Morris* v. *Morris*, 14 Cal. 76 [73 Am. Dec. 615], and *Kapp* v. *District Court, etc.*, 31 Nev. 454 [103 Pac. 235, 238].)

57 Cal. App.—35

But the court in this case was also apparently justified in finding that some of the alleged acts of cruelty, consisting of the infliction of physical violence upon the plaintiff by the defendant, were sufficiently established by the proofs.

We have not considered herein the testimony presented by the defendant. This we are not always required to do where the single question submitted on appeal is whether the decision of the trial court is sufficiently supported by the evidence. In such case the limit of inquiry by a reviewing court is whether there is sufficient evidentiary support to uphold the findings, and if it be found, as we have found to be true in this case, that the decision derives such support from the evidence produced by the plaintiff, then further inquiry to that end is entirely supererogatory.

We conclude that the judgment appealed from cannot justly be disturbed and it is, therefore, affirmed.

Burnett, J., and Finch, P. J., concurred.