(No. 6455.  September 23, 1937.)

WINIFRED BESS, Respondent, v. EVERETT BESS, Appellant.

[72 Pac. (2d) 285.]

Anderson, Bowen & Anderson, for Appellant.

Ezra Parkinson Monson, for Respondent.

AILSHIE, J.—This is an action by Winifred Bess against Everett Bess for divorce. The complaint charges cruelty alleged substantially as follows: (a) That about the 28th of May, 1936, defendant took their minor child, Everett Larry Bess, two and one-half years old, from their home, against plaintiff's will and, without informing her where he was going, went to West Virginia where he kept the child until August 20th, when he returned to Idaho; and that he did not advise the plaintiff of the whereabouts of the child until more than two weeks after leaving. (b) That almost daily from August 30, 1936, until the filing of the complaint, defendant threatened to shoot the plaintiff; (c) that on the evening of September 18th, after defendant's return and after they had retired for the night, defendant quarrelled with the plaintiff, became very angry and choked her and said, "I ought to kill you"; and told her that they would "find her carcass in the lake some night"; and that the plaintiff lived in constant fear of her life or great bodily harm at the hands of defendant. The court made no direct finding on paragraph (a) but found all the facts alleged in paragraphs (b) and (c) to be true.

Plaintiff's testimony sustained all the allegations of the complaint but it is contended by defendant that there was no substantial corroboration sufficient to comply with the requirements of sec. 31–703, which provides as follows:

"No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission or testimony of the parties . . . . "

It is generally agreed that the fundamental purpose of this statute is to guard against collusion between the parties to the marriage contract to have the contract dissolved. It has been so held by many courts. (*Lundy v. Lundy,* 23 Ariz. 213, 202 Pac. 809, and cases cited; *Crum v. Crum,* 57 Cal. App. 539, 207 Pac. 506; Keezer, Marriage and Divorce, 2d ed., sec. 518.)

Here it seems clear that there is no collusion and this clarity is established by the pleadings, proofs and circumstances of the case. The defendant employed able and experienced counsel who prepared and filed his answer denying all the material allegations of the complaint and plead defensive matter. They appeared in the trial court and contested every move in the case, cross-examined plaintiff and her witnesses and introduced evidence in defense. The defendant testified and positively denied every alleged act of cruelty and after the trial court decided against him he appealed to this court. This furnishes conclusive evidence that there is no collusion in this case. Under such circumstances no great amount of additional corroboration seems to be required by this statute; enough only, on some material facts, to convince the trial court of the truth of plaintiff's testimony.

This court has uniformly held that no definite rule, as to the degree of corroboration necessary under the statute, can be stated and that the decision in each case must be predicated on the facts and circumstances of the specific case. (*Bell v. Bell,* 15 Ida. 7, 96 Pac. 196; *De Cloedt v. De Cloedt,* 24 Ida. 277, 133 Pac. 664; *Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Stephens v. Stephens,* 53 Ida. 427, 24 Pac. (2d) 52.)

In the case last cited the court, in commenting on the purpose of the statute requiring corroboration in these cases, said:

"But where it is evident from the whole record that there is no collusion between the parties, slight evidence in corroboration of that of the plaintiff, aside from the admissions of the defendant, is sufficient to meet the requirements of the statute . . . . There is no evidence, whatever, indicating collusion between the parties. That being true, a slight amount

of corroborating evidence would have been sufficient to justify the court in granting plaintiff a divorce had the court found that the testimony of the appellant, regarding the acts of extreme cruelty alleged in the complaint, was true.''

Our statute on corroboration was taken literally from the California statute. In *Jansen v. Jansen*, 127 Cal. App. 294, 15 Pac. (2d) 777, the California court said:

''The contention, . . . . is that there is a complete lack of corroboration, and that without corroboration the facts could not be found. It will be conceded that no divorce may be granted upon the uncorroborated testimony of either party. Civ. Code, sec. 130. Corroboration is rather an elastic term, and whether or not testimony is corroborated depends upon the facts and circumstances of the particular case under discussion. Corroboration may be slight or it may be so compelling as to become actually direct evidence. The law has laid down no standard by which its weight or sufficiency may be gauged . . . . as a rule of law and appellate practice we must decline to set up what might be classed as a standard of corroborative sufficiency in the absence of a necessity therefor.'' (See, also, *Minnich v. Minnich*, 127 Cal. App. 1, 15 Pac. (2d) 804; *Keller v. Keller*, 132 Cal. App. 343, 22 Pac. (2d) 798.)

While the corroboration here is meager and does not cover all the facts testified to by plaintiff, it cannot be fairly said that there is no corroboration. There is to be found in the record corroboration in the following respects:

The mother testified to seeing ''two marks on her [plaintiff's] neck'' the following day, about nineteen or twenty hours after the alleged battery. On cross-examination she was asked:

''Q. They [red marks] were still there Monday?

''A. There was still red marks on her neck Monday.''

That something occurred that night seems evident from the circumstance that next morning the wife went to a neighbor's (Mr. and Mrs. Woodworth) and told them what had happened and sent a letter by them to her mother at Blackfoot and immediately following the receipt of the letter her mother (Mrs. Holliway) drove down to Pocatello where plain-

tiff told her what had happened and the mother then saw the marks on plaintiff's neck. Plaintiff testified that defendant repeatedly threatened to shoot her and that the night he choked her he said to her:

"One of these nights you will find your carcass in the lake," and that the night he took the child away, when he started to pack his and the baby's clothes, "he laid the gun out on the bed and told us not to touch that kid." On leaving he said to his wife, "I will be at the Terrell Hotel. . . . . If [you] want to talk to me, I will be at the Terrell Hotel." He admits that he did not go to the hotel but, on the contrary, drove out of town and on his way for West Virginia.

The witness, Ruby Holliway, corroborates the plaintiff's testimony as to what was said and done by defendant the evening he took the child and left.

Defendant admitted on the witness stand that he took the child to West Virginia, as alleged, and did not return him to Idaho until August 30th, but says:

"I told her I was going east. I told her that I figured on stopping at the Hotel that night, but after going down town, I figured I would pull out of town that night."

So the taking of the child and misinforming plaintiff as to where he would go that night is admitted, though defendant claims plaintiff knew he was "going east."

It is contended by appellant that if the marks on plaintiff's neck were red nineteen or twenty hours after the alleged choking, they could not have been made by defendant because they would not have been red that long after the bruise was inflicted. We do not attach great importance to the statement as to the *color* which the witness attributes to the marks or bruises, as that would probably depend largely on the lean or fatty condition of the neck (which is not an exhibit here), the severity of the bruise and its proximity to the veins and blood circulation. "The age of an ecchymosis," says medical authority, can be told "only within rather wide limits" from its color. (2 Witthaus & Becker's Med. Juris. and Forensic Med., pp. 13–15.)

It is further argued that proof that the marks or bruises were on plaintiff's neck the next day does not corroborate

plaintiff's testimony that defendant caused them. That contention is partially, though not wholly, sound. They might well have been there and still not have been caused by defendant, however the circumstance that they had trouble the night before sufficient to lead her to go to a neighbor's and send a letter to her mother to come, and that her mother saw the marks the next day; and the further fact that he kept a gun and had intimidated her with it when he took the child away; and the admitted fact that he had taken the child without her consent and kept it away nearly three months, might well incline the trier of facts to conclude that the stronger probabilities are that the marks on her neck were caused by defendant as claimed by the plaintiff, than that they were caused by anyone else.

*Roelke v. Roelke,* 103 Wis. 204, 78 N. W. 923, is a case very similar to the one at bar as to the nature of the cruelty inflicted and the extent and character of corroboration. That case was presented by very able counsel and written by a distinguished jurist, Justice Winslow, who said:

"We were asked to reverse this judgment of divorce on the merits because the plaintiff's testimony as to cruel treatment was not corroborated by the testimony of other witnesses. Cir. Ct. Rule 29, sec. 2. The only act of physical violence which was alleged or proved was a striking and choking of the plaintiff by the defendant on May 18, 1898. This was alleged to be in the absence of all other witnesses, but it was corroborated by the testimony of the 19 year old son, who testified to seeing the marks upon his mother's face and throat immediately after she left the house. This seems to have been the only corroboration possible. Had a judgment of divorce been denied, we should probably not have interfered with the judgment. The case is certainly not a strong one. But the trial judge saw the parties, and could judge far better than we can whether or not the conduct of the defendant towards the plaintiff has been such as to make life intolerable and unsafe for the plaintiff."

In reading the record, for the purpose of determining whether there was sufficient evidence before the trial judge to constitute corroboration, within the intent of the statute,

we must keep in mind the fact that the parties and their witnesses were all personally before the judge, who had a right, and, indeed, it was his duty, to consider, not only the demeanor and conduct of the parties and their witnesses, but also the physical appearance and intellectual comprehensions of the plaintiff and defendant, their respective apparent moral sense of marital responsibility, their relative degrees of refinement or culture; the mental effect the detailed conduct of one party would probably have upon the sensibilities of the other. These are circumstances cognizable by the trial court which we do not have before us and to which we must allow some influence in considering the proofs in the record.

Appellant also contends that the court erred in refusing to permit counsel for defendant to inspect the notes that the plaintiff testified she had kept bearing upon incidents of disagreement in their married life. It is claimed by counsel that he was entitled to inspect such notes or memoranda under the authority of sec. 16–1212 and the recent decision of this court in *State v. McMahan*, 57 Ida. 240, 65 Pac. (2d) 156. An examination of the record makes it clear that this case does not come within the purview of the statute or the decision in *State v. McMahan*. Here the witness testified that she had ''kept notes on these matters.'' When asked the question, ''Are you testifying from your notes,'' the witness answered, ''No.'' She was further questioned, ''Well, what are you testifying from, what somebody told you, or notes, or what?'' to which she answered: ''Facts and memory.'' And nowhere in the record does it appear that she ever referred to any writing or notes or had them in her hand or submitted them to her attorney, or that any such writing was visible to anyone in the courtroom. Clearly this does not present a case where ''Whenever a writing is shown to a witness it may be inspected by the opposite party.'' (Sec. 16–1212.)

Judgment affirmed. Costs to respondent.

Morgan, C. J., and Holden, Budge and Givens, JJ., concur.